RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 11a0245p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

JOE D'AMBROSIO,

　　　　　　　*Petitioner-Appellee,*

　　　*v.*

MARGARET BAGLEY, Warden,

　　　　　　　*Respondent-Appellant.*

No. 10-3247

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 00-02521—Kathleen McDonald O'Malley, District Judge.

Argued: November 30, 2010

Decided and Filed: August 29, 2011

Before: BOGGS, GIBBONS, and ROGERS, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Stephen E. Maher, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellant. John Q. Lewis, JONES DAY, Cleveland, Ohio, for Appellee. **ON BRIEF:** Stephen E. Maher, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellant. John Q. Lewis, JONES DAY, Cleveland, Ohio, David E. Mills, THE MILLS LAW OFFICE LLC, Cleveland, Ohio, for Appellee.

ROGERS, J., delivered the opinion of the court, in which GIBBONS, J., joined. BOGGS, J. (pp. 17–27), delivered a separate dissenting opinion.

_____

**OPINION**

_____

ROGERS, Circuit Judge. This case requires this court to resolve whether a federal court has jurisdiction to bar the reprosecution of a criminal defendant when the court determines that the state has failed to comply with an earlier order issuing a

1

conditional writ of habeas corpus. Margaret Bagley, warden for the State of Ohio, appeals the district court's decision to vacate a prior order and issue an unconditional writ that bars the reprosecution of Joe D'Ambrosio, an Ohio death row inmate. Bagley argues that the district court lacked both subject-matter and Article III jurisdiction to make this ruling. However, because the state failed to comply with the district court's conditional writ, because the district court was acting pursuant to a Federal Rule of Civil Procedure 60(b) motion, and because this clearly presents a case or controversy, the district court had both subject-matter and Article III jurisdiction.

## I.

In 1988, Joe D'Ambrosio was indicted, along with his two co-defendants Thomas "Mike" Keenan and Edward Espinoza, on four separate counts of aggravated murder with prior calculation and design, aggravated felony murder, kidnaping, and aggravated burglary. The three men were each tried separately. D'Ambrosio waived his right to a trial by jury, and a three-judge panel convicted him on all counts and sentenced him to death. D'Ambrosio's convictions were upheld on direct appeal, *State v. D'Ambrosio*, No. 57448, 1990 WL 125453, at *26 (Ohio Ct. App. Aug. 30, 1990), and affirmed by the Ohio Supreme Court, *State v. D'Ambrosio*, 616 N.E.2d 909, 921 (Ohio 1993). Following a remand to permit the state court of appeals to conduct an independent review of the death sentence, the Ohio Supreme Court also affirmed D'Ambrosio's sentence. *State v. D'Ambrosio*, 652 N.E.2d 710, 716 (Ohio 1995). D'Ambrosio unsuccessfully sought post-conviction relief in the state courts pursuant to Ohio Rev. Code § 2953.21, *State v. D'Ambrosio*, No. 75076, 2000 WL 283079, at *2 (Ohio Ct. App. Mar. 16, 2000), and D'Ambrosio's application to reopen his direct appeal was also denied, *State v. D'Ambrosio*, No. 57448, 2001 WL 1399850, at *2 (Ohio Ct. App. Nov. 2, 2001).

In March 2001, D'Ambrosio filed a petition for a writ of habeas corpus in the federal district court. After conducting an evidentiary hearing in July 2004, the district court concluded that the prosecution had failed to disclose exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and granted a conditional writ,

requiring the state either to set aside D'Ambrosio's convictions and sentences or to conduct another trial.[1] *D'Ambrosio v. Bagley*, No. 1:00 CV 2521, 2006 WL 1169926, at \*56 (N.D. Ohio Mar. 24, 2006).  We affirmed that decision, *D'Ambrosio v. Bagley*, 527 F.3d 489, 499-500 (6th Cir. 2008), and on September 11, 2008, the district court issued the conditional writ.

The Cuyahoga County prosecutor notified the state court of this judgment and requested that the state court docket D'Ambrosio's case for a new trial within 180 days, or before March 10, 2009.  The state court scheduled D'Ambrosio's retrial for March 2, 2009, and began pretrial proceedings.  However, a little more than one week before the retrial was to begin, the prosecutor notified defense counsel of the existence of additional evidence, including blood samples and soil samples.  Defense counsel sought additional time to examine and possibly test this newly disclosed evidence, prompting the trial court to change the previously scheduled trial date, which was within the 180 days, to May 4, 2009, which was not. On March 4, 2009, the state moved the federal district court for an enlargement of time in which to conduct a retrial because of this extension by the state court.  On March 6, 2009, the district court granted an enlargement of time solely for the purpose of having the parties submit briefs addressing the issues presented in the motion.  In his response to the motion, D'Ambrosio asked the district court to grant an unconditional writ and bar his reprosecution because of the state's failure to comply with the conditional writ.

On April 1, 2009, the district court conducted an evidentiary hearing in regard to the state's motion, and on April 27, 2009, the district court filed its opinion and order, denying the motion and issuing an unconditional writ.  *D'Ambrosio v. Bagley*, 619 F. Supp. 2d 428, 460 (N.D. Ohio 2009).  In this order, the district court found that "the State did not respond to multiple discovery requests; produced material, relevant items

---

[1]The court's original judgment required the state to either "(1) set aside D'Ambrosio's conviction and sentence of death; or (2) conduct another trial . . . within 180 days from the effective date of this Order."  The court filed an amended judgment three weeks later, which clarified its order, requiring the state to either "(1) set aside D'Ambrosio's convictions and sentences as to all counts of the indictment, including the sentence of death; or (2) conduct another trial . . . within 180 days from the effective date of this Order."

of discovery on the eve of trial; and then sought to interfere with the orderly progress of the trial through gamesmanship," and concluded that these failings "all counsel against a finding that the State engaged in a good-faith effort to substantially comply with this Court's mandate." *Id.* at 455. The district court also ordered the expungement of D'Ambrosio's record, but declined to bar his reprosecution. *Id.* at 456, 460.

In regard to D'Ambrosio's reprosecution, the district court explained that "while there is certainly no clear-cut demonstration of D'Ambrosio's guilt, . . . the evidence also does not so strongly suggest his innocence that, standing alone, the state of the evidence against him would demand an order barring retrial;" that "D'Ambrosio cannot demonstrate material prejudice from the additional two-month delay," because "the state court protected D'Ambrosio from the most material consequences of those discovery failures by granting a continuance to afford him the opportunity to test the blood evidence;" and that "[w]hile the State's discovery compliance has been woefully inadequate over the course of its dealings with D'Ambrosio . . . , and the State's attempt to contort the reality of what occurred in state court before it returned here is both reckless and, frankly, baffling," it is not the sort of egregious conduct that warrants barring reprosecution as "there is no evidence of an attempt by the current prosecutors to affirmatively hide evidence or distort witness testimony." *Id.* at 459-60. Moreover, the district court noted that the actions of the state trial court and the district court's confidence in the state court's ability to conduct a fair retrial were relevant to its decision to not bar D'Ambrosio's reprosecution, stating that "the state court is committed to conducting a constitutional trial," and that "[t]he state court's decision to delay the proceedings both benefits D'Ambrosio and ensures that the State has and will continue to honor its discovery obligations." *Id.* at 460. D'Ambrosio appealed the district court's decision with respect to his reprosecution.

On April 26, 2009 (the day before the district court issued its ruling denying the prosecution's motion for an enlargement of time), Espinoza, the prosecution's key witness, died. The prosecution learned of Espinoza's death four days later, but did not inform the state trial court of this development until July. Presumably, the district court

did not know of Espinoza's death until August 14, 2009, the date on which D'Ambrosio moved the district court, pursuant to Federal Rule of Civil Procedure 60(b)(2), (5), and (6), to vacate its April 27 order and to bar his reprosecution in light of Espinoza's death. D'Ambrosio argued that Espinoza's death prevented D'Ambrosio from "hav[ing] the opportunity to expose the truth as Espinoza faced the withheld exculpatory evidence that eviscerates his entire story and the State's case." According to D'Ambrosio, the state court had ruled to exclude Espinoza's prior testimony from the retrial, because D'Ambrosio's inability to cross-examine him would violate the Confrontation Clause. After conducting an evidentiary hearing, the district court issued an order indicating its inclination to grant D'Ambrosio's Rule 60(b) motion if this court remanded the case (which was pending before us because of D'Ambrosio's appeal).

This court remanded the case and on March 3, 2010, the district court granted D'Ambrosio's Rule 60(b) motion, vacating a portion of its original judgment and barring D'Ambrosio's reprosecution. *D'Ambrosio v. Bagley*, 688 F. Supp. 2d 709, 735 (N.D. Ohio 2010). The district court reasoned that the state's actions were of the "extraordinary" nature required to bar reprosecution:

> For 20 years, the State held D'Ambrosio on death row, despite wrongfully withholding evidence that "would have substantially increased a reasonable juror's doubt of D'Ambrosio's guilt." Despite being ordered to do so by this Court during the extensive habeas proceedings before it, the State still failed to turn over all relevant and material evidence relating to the crime of which D'Ambrosio was convicted. Then, once it was ordered to provide D'Ambrosio a constitutional trial or release him within 180 days, the State did neither. During those 180 days, the State engaged in substantial inequitable conduct, wrongfully retaining and delaying the production of yet more potentially exculpatory evidence. And, as the 180-day deadline approached, certain of the State's counsel baselessly attacked the state trial judge, came before this Court and supplied testimony that, charitably, only can be described as "strain[ing] credulity," and showed startling indifference to D'Ambrosio's rights. Because the state failed to retry D'Ambrosio within 180 days, moreover, the critical State's witness—the man around whom the entire theory of the State's case revolved—is no longer available for trial, a fact the State knew but withheld from D'Ambrosio, the state court, and this Court. To fail to bar

retrial in such extraordinary circumstances surely would fail to serve the interests of justice.

*Id.* at 727-28 (alteration in original) (citations omitted). The district court found that Espinoza's death, and the state's failure to inform anyone of his passing for approximately two months, affected its evaluation of the state's inequitable conduct and of the material prejudice against D'Ambrosio, and tipped the balance in favor of barring reprosecution. *Id.* at 728-31. The state, represented by the warden, now appeals this decision.

## II.

The district court had jurisdiction to grant D'Ambrosio's Rule 60(b) motion, vacate its prior judgment, and issue an unconditional writ of habeas corpus that bars D'Ambrosio's reprosecution.

## A.

The broad discretion of the habeas court in fashioning a proper remedy allows a district court to bar the state from reprosecuting the habeas petitioner in "extraordinary circumstances." *Satterlee v. Wolfenbarger*, 453 F.3d 362, 370 (6th Cir. 2006). In *Satterlee*, the state failed to comply with a conditional writ, which prompted the district court to grant an unconditional writ, ordering the petitioner's immediate release and the expungement of his conviction. *Id.* at 365. On appeal we upheld both writs, but because the unconditional writ did not designate whether the state could reprosecute the petitioner, we remanded the case for the district court to clarify its intent. *Id.* at 365-70. We explained our remand as follows:

> In a typical case in which a prisoner is released because a state fails to retry the prisoner by the deadline set in a conditional writ, "the state is not precluded from rearresting petitioner and retrying him under the same indictment." . . . *However, in "extraordinary circumstances," such as when "the state inexcusably, repeatedly, or otherwise abusively fails to act within the prescribed time period or if the state's delay is likely to prejudice the petitioner's ability to mount a defense at trial," a habeas court may "forbid[] reprosecution."*

*Id.* at 370 (second alteration in original) (emphasis added) (citations omitted).

We recently reaffirmed *Satterlee*'s holding that the federal court can bar a habeas petitioner's reprosecution in *Girts v. Yanai*, 600 F.3d 576 (6th Cir. 2010). In *Girts*, the state failed to comply with a conditional writ in the time provided and moved for a thirty-day extension of the original time limit. *Id.* at 579. Though the district court initially granted this motion, it later reconsidered that ruling and entered an unconditional writ. *Id.* After the state released the petitioner, it requested the district court to rule on whether the state could reprosecute him, and the district court held that the state could do so. *Id.* at 579-80. The petitioner appealed this decision to permit his reprosecution, but we held that the district court both had jurisdiction to make that determination and was correct in deciding that the preclusion of reprosecution was not appropriate in that case.[2] *Id.* at 580-86. We explained that "[t]he initial determination about whether a subsequent trial should be barred is a necessary part of the grant of a writ," and found *Satterlee* to be binding precedent in this regard. *Id.* at 581. Further, we noted that "a district court sitting in habeas has jurisdiction to consider the circumstances that exist up until either the state complies with a conditional writ or the court issues an unconditional writ, but does not have jurisdiction to consider circumstances that unfold after the state complies with the writ." *Id.* at 582.

The warden points to *Pitchess v. Davis*, 421 U.S. 482 (1975), and *Fisher v. Rose*, 757 F.2d 789 (6th Cir. 1985), to support her contention that "[t]he District Court lacked jurisdiction under 28 U.S.C. 2254 to bar reprosecution," but those cases are not precisely on point. In *Davis*, the district court granted a petitioner's motion to modify a conditional writ of habeas corpus, replace it with an absolute writ, and enjoin any retrial

---

[2]In *Girts*, we also rejected the petitioner's argument that permitting reprosecution would violate the Double Jeopardy Clause. 600 F.3d at 586-87. We explained,

> The general rule . . . is that a successful post-conviction appeal is considered differently than a mistrial. "[R]eprosecution for the same offense is permitted where the defendant wins a reversal on appeal of a conviction . . . [T]he crucial difference between reprosecution after appeal by the defendant and reprosecution after a sua sponte judicial mistrial declaration is that in the first situation the defendant has not been deprived of his option to go to the first jury and, perhaps, end the dispute then and there with an acquittal."

*Id.* at 587 (alterations in original) (quoting *United States v. Jorn*, 400 U.S. 470, 484 (1971)).

on the pending state charges. 421 U.S. at 485. However, unlike in D'Ambrosio's case, the district court granted this motion *after* the state had complied with the conditional writ by moving to retry the petitioner. The Court explained that "[n]either Rule 60(b), 28 U.S.C. § 2254, nor the two read together, permit a federal habeas court to maintain a continuing supervision over a retrial conducted pursuant to a conditional writ granted by the habeas court."[3] *Id.* at 490. In *Fisher*, the district court granted a conditional writ of habeas corpus, which was "stayed for ninety (90) days pending appeal by [the state] or, within which time, the State may on its own motion vacate petitioner's conviction and grant him a new trial." 757 F.2d at 790. Though the state court set a retrial date, the district court ordered the release of the petitioner and barred his reprosecution after the petitioner alleged that the state had unreasonably delayed retrying him. *Id.* We concluded in *Fisher* not that the district court lacked jurisdiction, but that it had abused its discretion in barring retrial, given that the state had appointed counsel, set bond, and set a trial date within the prescribed ninety days. *Id.* at 791. We noted that if Fisher had been able to meet the requirements of the bond, he would have been released. *Id.* We also stated that "[t]hese facts indicate that at the time of the [federal court hearing], Fisher was no longer in custody pursuant to the constitutionally defective judgment of conviction, but was being held pursuant to the indictment." *Id.*

*Davis* and *Fisher* are both different from D'Ambrosio's case. Even assuming that *Fisher* dealt with lack of jurisdiction rather than abuse of discretion, both of these cases involved the district court's acting *after* the state had complied with a conditional writ. At that point in time, the district court's jurisdiction was extinguished. But in D'Ambrosio's case the state never complied with the conditional writ, and the district court's jurisdiction remained intact pursuant to the principle of *Gentry v. Deuth*, 456 F.3d 687, 692 (6th Cir. 2006), that "the district court retain[s] jurisdiction to enforce its conditional grant of a writ of habeas corpus." The warden has even acknowledged the

---

[3]The Supreme Court principally relied on 28 U.S.C. § 2254's exhaustion requirement in reaching its decision in *Davis*, holding that the petitioner had "failed to exhaust available state remedies on the claim which formed the basis for the unconditional writ, and he is entitled to no relief based upon a claim with respect to which state remedies have not been exhausted." 421 U.S. at 490. However, exhaustion is not an issue in this case. *See infra* pp. 14-15.

consequences of non-compliance with a conditional writ, stating in her brief to this court that "[a] different matter is presented . . . when the state fails to perform the condition established in the conditional writ," as then "the District Court retains jurisdiction to find noncompliance and release the prisoner." Thus, the case law cited by the warden does not support her contention that the district court lacked jurisdiction to bar D'Ambrosio's reprosecution. In fact, precedent supports such jurisdiction.

The warden resists this conclusion—that the district court retained jurisdiction to monitor the state's compliance with the conditional writ in D'Ambrosio's case—by arguing that either the state's compliance with the conditional writ or the vacatur of D'Ambrosio's convictions divested the district court of jurisdiction to issue an unconditional writ. Both of these arguments lack merit in the context of this case. Initially, the warden claimed that the state complied with the conditional writ when it commenced proceedings against D'Ambrosio, such that the district court's jurisdiction had expired. However, the warden appears to have abandoned this argument in her reply brief.[4] Moreover, this argument lacks merit because the district court's mandate required that D'Ambrosio's retrial be *conducted* (i.e., completed) within 180 days, not merely that he be granted a new trial within that time period. The warden cites *Davis* to support her argument for the state's compliance, but that case involved a conditional writ that hinged on *granting* a new trial, not *conducting* a new trial like the conditional writ in D'Ambrosio's case.[5] *See* 421 U.S. 482. It is clear that the state never conducted a new trial for D'Ambrosio, thus failing to comply with this portion of the writ.

---

[4]The warden's reply brief twice states flatly that when the district court issued its unconditional writ on April 24, 2009, "it had jurisdiction to do so."

[5]Many of the cases that hinge on the granting of a new trial also involve periods of ninety days or less in which to comply, which is obviously less than the 180-day period in this case. This makes sense considering that the district court wanted the state to conduct a new trial against D'Ambrosio within this time and not merely grant him one. In *Patterson v. Haskins*, 316 F.3d 596, 611 (6th Cir. 2003), this court granted the defendant "a conditional writ of habeas corpus that [would] result in his release from prison unless the state of Ohio commence[d] a new trial against him within 180 days from the date of [that] opinion." The state began proceedings against the defendant, but they ended in a mistrial, prompting the state to commence a third trial against him. *Patterson v. Haskins*, 470 F.3d 645, 650 (6th Cir. 2006). The defendant moved the district court for an unconditional writ, arguing that the state had failed to comply with the conditional writ by not completing a new trial against him within 180 days. *Id.* However, this court held that the state had complied with a "fair reading" of its initial opinion, which required only commencement and not completion of proceedings. *Id.* at 668-69. A fair reading of the writ at issue in D'Ambrosio's case requires more than the mere grant of a new trial for compliance.

The state also failed to satisfy the other alternative for compliance with the conditional writ as it did not set aside D'Ambrosio's conviction and sentences. Indeed, the warden did not even contend, until oral argument at least, that the state had complied with that alternative. Here, the state clearly chose to conduct a new trial, even though it failed to do so, and there is no indication that the state at any point in time decided instead to exercise the setting-aside alternative. Therefore, the state never complied with the conditional writ in D'Ambrosio's case, and the district court retained jurisdiction over it. *See Gentry*, 456 F.3d at 692. The warden even conceded as much when seeking from the district court an enlargement of time to retry D'Ambrosio.

At oral argument, the warden's compliance argument morphed into a contention that the district court's jurisdiction was extinguished because D'Ambrosio's convictions were vacated. The warden relies on *Eddleman v. McKee*, 586 F.3d 409 (6th Cir. 2009), in making this argument, but this case is distinguishable. In *Eddleman*, the district court initially granted, and we upheld, a conditional writ, which required the state to release the petitioner unless a date for a new trial was scheduled within forty-five days. *Id.* at 411. However, instead of retrying the petitioner, the state decided to vacate his convictions, release him, and then rearrest him pursuant to the original information. *Id.* In response, the petitioner moved for the district court to grant an unconditional writ barring retrial, arguing that the state had failed to comply with the conditional writ. *Id.* The district court initially denied this motion, but after the date for the petitioner's trial was delayed for almost a year, the petitioner renewed his motion and the district court agreed to grant an unconditional writ barring his reprosecution. *Id.* at 411-12. On appeal, the state challenged the district court's jurisdiction to issue this unconditional writ, claiming that the unconstitutional conviction had been vacated and that the petitioner was being held pursuant to the information and not the conviction. *Id.* at 412. We agreed with the state and reversed the district court's ruling. *Id.* at 413. We explained this holding as follows:

> [T]he limitation [that a state prisoner be held pursuant to a state court judgment] also means that, once the unconstitutional judgment is gone, so too is federal jurisdiction under § 2254. . . . That a petitioner's first

trial was unconstitutional in some respect, generally does not mean he can never be tried again. The power to "release" a prisoner under § 2254 normally is not a power to release him forever from the underlying charge. It is the power, instead, only to release him from custody pursuant to the unconstitutional judgment.

*Id.*

*Eddleman* is different from this case because D'Ambrosio's conviction was not "vacated" as the habeas petitioner's in *Eddleman* was. The unconstitutional judgment against D'Ambrosio was still subject to the district court's jurisdiction when the district court granted the unconditional writ. In *Eddleman* the petitioner had not only been rearraigned and afforded a bond hearing, but "counsel for both [the petitioner] and the State represented to the court, and the court itself agreed, that [the petitioner's] unconstitutional conviction had been vacated."[6] *Id.* at 412. These circumstances led us to conclude that the vacatur of Eddleman's conviction had divested the district court of jurisdiction. *Id.* Even though the state court judge in D'Ambrosio's case used the term "vacate" on occasion during D'Ambrosio's pretrial proceedings when referring to his prior charges, the record clearly demonstrates that neither D'Ambrosio nor the prosecution truly intended for those charges to be vacated as the parties did in *Eddleman*. Merely using the term "vacate" in reference to D'Ambrosio's prior convictions is not enough. The district court appears to have used this term to express that D'Ambrosio's prior conviction would not be used against him in his new trial;[7] because that conviction was ruled unconstitutional, it was nullified and should have no bearing on his future prosecution. *See Gall v. Scroggy*, 603 F.3d 346, 356 (6th Cir. 2010). Neither the district court nor the state appeared to use this term in the manner suggested by *Eddleman*.

---

[6] In so ruling, we recognized that "it [was] true, as [the petitioner] point[ed] out, that 'the record in the trial court is devoid of any written order [confirming that his prior conviction had been vacated],' and the better practice certainly would have been for the state court to have entered a written order," but we held that "[t]he record makes clear, nonetheless, that [the petitioner's] conviction was vacated." *Eddleman*, 586 F.3d at 412 (citation omitted).

[7] For instance, when the state argued at the bail hearing for D'Ambrosio's new trial that "giving bail to a man on death row is unheard of," the state court noted the following: "The court agrees. [But] Mr. D'Ambrosio is not on death row. His conviction is vacated. The Defendant stands before the court today as he did in his October 14th, 1988 arraignment with no prior felony record." In using the term "vacate," the court appeared merely to be conveying that D'Ambrosio's prior conviction, which was declared unconstitutional by this court, would not be held against him in his retrial proceedings.

Looking at the whole course of conduct counsels against finding that D'Ambrosio's convictions were "vacated." For example, in her initial brief to this court, the warden acknowledged that the state had chosen the retrial option, stating that "[w]hen retrial proceedings commenced in State court, . . . the State was proceeding with the retrial option afforded under the conditional writ issued by the District Court." In addition, if the state had considered D'Ambrosio's conviction to have been vacated, then the prosecution would have had no need to move the district court for an enlargement of time to retry D'Ambrosio, as it did on March 4, 2009.[8] Moreover, the prosecution filed a request for retrial with the state court on September 30, 2008, notifying that court that the prosecution had to either set aside D'Ambrosio's conviction and sentence or conduct another trial within 180 days, and signifying that it was choosing the latter course of action. Statements of confused parties and judges do not vacate convictions. What vacates a conviction is an entry in the court docket, which—depending on the state's procedures—is likely made through a court order, or clear actions by the court signifying a vacatur. The state has failed to submit any proof that D'Ambrosio's record was expunged or that the district court or state took any action to actually vacate D'Ambrosio's convictions. The totality of these circumstances demonstrates that D'Ambrosio's convictions were never "vacated" as Eddleman's convictions were. Thus, the district court continued to retain jurisdiction over D'Ambrosio's case.

This case is further complicated by the fact that the district court did not bar D'Ambrosio's reprosecution when it initially granted the unconditional writ of habeas corpus, but D'Ambrosio's use of Rule 60(b) resolves any further jurisdictional questions.[9] The district court did not bar D'Ambrosio's reprosecution until he moved

---

[8]At oral argument, counsel for the warden contended that the prosecution merely made this motion as a matter of comity. However, within the motion the prosecution acknowledged the 180-day deadline and its need to comply with it. This suggests that the prosecution was not merely making this motion as a matter of comity, but because it had chosen the retrial option and knew that it was about to violate the mandate of the conditional writ.

[9]Federal Rule of Civil Procedure 60(b) states:

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

for relief from the judgment granting the original unconditional writ, which fact could suggest that the district court was acting after the unconstitutional conviction was dispensed with and when the district court no longer had subject-matter jurisdiction. However, D'Ambrosio sought relief from the district court's judgment permitting reprosecution through Rule 60(b), and this court has described such a motion as follows:

> It has been long established that no independent federal jurisdictional basis is needed to support a Rule 60(b) motion proceeding. A Rule 60(b) motion is considered a continuation of the original proceeding. "If the district court had jurisdiction when the suit was filed, it has jurisdiction to entertain a Rule 60(b) motion. This jurisdiction is not divested by subsequent events."

*Charter Twp. of Muskegon v. City of Muskegon*, 303 F.3d 755, 762 (6th Cir. 2002) (quoting 12 James W. Moore, et al., *Moore's Federal Practice* § 60.61 (3d ed. 1997)). This supports the district court's continuing jurisdiction over its grant of an unconditional writ of habeas corpus pursuant to a Rule 60(b) motion as long as it had jurisdiction to grant the unconditional writ in the first place, which it did here.

Though in *Davis* the Supreme Court stated that "[n]either Rule 60(b), 28 U.S.C. § 2254, nor the two read together, permit a federal habeas court to maintain a continuing supervision over a retrial conducted pursuant to a conditional writ granted by the habeas court," 421 U.S. at 490, the district court in that case barred reprosecution in conjunction with an unconditional writ of habeas corpus, which came *after* the state court had complied with the conditional writ. The state court never complied with the conditional writ in D'Ambrosio's case.

Moreover, allowing the district court to use Rule 60(b) to bar D'Ambrosio's reprosecution does not present the same sort of exhaustion issues seen in *Davis* and

---

. . . .
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
. . . .
(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.

*Fisher*.    The petitioners in both *Davis* and *Fisher* based their requests for an unconditional writ, which came after the conditional writ had been complied with, on a new claim.    In *Davis*, the petitioner was granted a conditional writ on a *Brady* claim, but argued for the grant of an unconditional writ because of the destruction of certain evidence unconnected to the *Brady* claim.    In *Fisher*, the petitioner was granted a conditional writ on a Confrontation Clause claim, but based his argument for an unconditional writ on a speedy trial violation.    D'Ambrosio, however, based his entire argument for an unconditional writ on the *Brady* claim which formed the basis of the conditional writ, the state's failure to comply with the conditional writ, and the events occurring between the time the district court granted the conditional writ and the time it granted the unconditional writ; he did not base his argument on events occurring after the district court granted the unconditional writ and unconnected to the conditional writ.[10]    Further, in raising the issue of Espinoza's death in his Rule 60(b) motion, D'Ambrosio was not seeking an unconditional writ barring reprosecution of a new and never-before-raised due process claim, but was instead seeking the modification—in order to bar reprosecution—of the unconditional writ based on the *Brady* violation and the failure to comply with the conditional writ.    This is the sort of argument envisioned by the "extraordinary circumstances" standard, which permits barring reprosecution "if the state's delay is likely to prejudice the petitioner's ability to mount a defense at trial." *Satterlee*, 453 F.3d at 370.    D'Ambrosio argued that the loss of a key witness was a collateral consequence of the state's noncompliance with the original writ based on the *Brady* violation that had occurred but was not known to the court or the parties when the court originally issued its unconditional writ, and that this constituted the sort of "extraordinary circumstances" sufficient to bar reprosecution.    The district court had jurisdiction to make this determination.[11]

---

[10]D'Ambrosio sought relief from the district court's unconditional writ without a bar of reprosecution because of a key witness's death.    The key witness died after the expiration of the time period within which the state court was supposed to retry D'Ambrosio.    But the death did not occur after the district court's initial grant of an unconditional writ.

[11]Of course whether "extraordinary circumstances" that warrant barring reprosecution actually existed is an issue beyond the scope of this appeal because the warden has not challenged the merits of this determination.    *See infra* Part II.C.

It is also significant that in *Satterlee* and *Girts* the district court did not make its determination regarding whether to bar reprosecution at the same time that it decided to grant an unconditional writ of habeas corpus. Instead, both cases required some clarification by the district court as to whether it intended to bar reprosecution after it had granted the unconditional writ. *See Satterlee*, 453 F.3d at 370; *Girts*, 600 F.3d at 579-80. In fact, in *Satterlee* this court remanded the case to the district court—after we affirmed the grant of an unconditional writ and the expungement of the petitioner's record—for a determination as to reprosecution. 453 F.3d at 370. Had the district court lacked jurisdiction to consider this question it would have been inappropriate for this court to order such a remand. These decisions suggest instead that a determination regarding reprosecution is connected to the unconditional writ, and any determination to issue the writ, including a ruling on a Rule 60(b) motion for relief from judgment, necessarily involves contemplation of whether to bar reprosecution. Thus, the district court had subject-matter jurisdiction to vacate part of its original judgment, grant the unconditional writ, and bar D'Ambrosio's reprosecution.

B.

The warden also asserts that the district court was without Article III jurisdiction when it issued the unconditional writ barring D'Ambrosio's reprosecution, but this claim is illogical. Article III jurisdiction requires only the existence of a "case or controversy." "This case-or-controversy requirement subsists through all stages of federal judicial proceedings[, which means that] [t]he parties must continue to have a personal stake in the outcome of the lawsuit." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-78 (1990)) (internal quotation marks omitted). The warden suggests that because D'Ambrosio held both an unconditional writ and an order for expungement when he invoked the jurisdiction of the district court, his claim was moot. But D'Ambrosio certainly still had a personal interest in an issue that was capable of determination by the district court—that is, whether he could be reprosecuted.

The warden cannot rely on the fact that D'Ambrosio was no longer incarcerated when he sought relief from the district court's judgment granting the unconditional writ and permitting his reprosecution. This court and the United States Supreme Court have consistently held that a habeas petition can still be maintained after a prisoner is no longer detained as long as some "collateral consequence" of the conviction still exists. *See, e.g.*, *id.* at 7-9; *Gentry*, 456 F.3d at 693-95. Here, that collateral consequence would be the risk of reprosecution, which is a risk that is both unique to the granting of appellate relief and highly likely to occur in D'Ambrosio's case. Accordingly, the district court clearly had Article III jurisdiction to resolve D'Ambrosio's request for relief from the initial ruling on his reprosecution.

## C.

After establishing jurisdiction, the next step in analyzing the propriety of barring D'Ambrosio's reprosecution would be to determine whether the district court abused its discretion in doing so. However, the warden does not challenge the district court's exercise of discretion in her appeal to this court.

## III.

For these reasons, we affirm the district court's judgment granting an unconditional writ of habeas corpus and barring D'Ambrosio's reprosecution.

———————————

**DISSENT**

———————————

BOGGS, Circuit Judge, dissenting.  For more than twenty years, the State of Ohio has displayed a remarkable inability to competently prosecute Joe D'Ambrosio. In 1988, the state botched D'Ambrosio's trial by violating *Brady v. Maryland*, 373 U.S. 83 (1963), an error that later came back to bite it in federal habeas review.  *D'Ambrosio v. Bagley*, 527 F.3d 489 (6th Cir. 2008).  Then, after D'Ambrosio was issued a conditional writ of habeas corpus, the state misunderstood the district court's clear, binary order and attempted to simultaneously comply with both of the two alternatives it was given: retry D'Ambrosio within 180 days *or* vacate his conviction and release him.  After failing to complete only the prompt-retrial option, the hapless state marched back to district court and, making D'Ambrosio's argument for him, conceded that it failed to comply with the conditional writ.  Ever since, the state has asserted a variety of confused jurisdictional arguments in both the district court and in this court, and it is now in the position where it may have to let a man it believes to be a murderer go forever free.  Whether D'Ambrosio deserves that windfall I cannot say, although, after more than twenty years of bungling his criminal proceedings, surely the state deserves that penalty.  But this is a case about jurisdiction.  Whatever the equities in D'Ambrosio's favor, the state of Ohio—by sheer luck and nothing more—managed to do just enough to strip the district court of its power to decide the issue.  Accordingly, I would reverse the district court and dismiss the case.

I

Because the state of Ohio vacated D'Ambrosio's unconstitutional conviction and released him from any confinement pursuant to that conviction, thereby complying with the district court's conditional writ of habeas corpus, the district court lacked jurisdiction to issue an unconditional writ.  In my view, the majority commits two major errors in coming to an opposite conclusion.

First, the majority erroneously considers compliance with the precise terms of the conditional-writ order to be the primary jurisdictional inquiry, and in doing so loses the forest for the trees. It is worth reviewing what exactly a conditional writ is. When a federal court holds that a prisoner's sentence is unconstitutional, the prisoner is instantly entitled to an unconditional writ of habeas corpus—immediate release and vacation of the conviction. However, as a convenience to the state, the federal court may instead issue a conditional writ, which delays the issuance of the unconditional writ so that the state has an opportunity to cure its own constitutional violation. *Wilkinson v. Dotson*, 544 U.S. 74, 86–87 (2005) (Scalia, J., concurring); *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987); *Gentry v. Deuth*, 456 F.3d 687, 692 (6th Cir. 2006). The backdrop of a conditional writ, then, is the release and vacation provided by an unconditional writ, which fully vindicates the prisoner's constitutional rights, and the sole purpose of a conditional writ is to afford the state a period of time to accomplish that result on its own before the district court must directly interfere with the state's judgment. Federal courts' preference for conditional writs is obvious in light of the concepts of federalism embodied in the structure of federal habeas corpus. *See* 28 U.S.C. § 2254; *Coleman v. Thompson*, 501 U.S. 722, 726 (1991) ("This is a case about federalism. It concerns the respect that federal courts owe the States . . . when reviewing the claims of state prisoners in federal habeas corpus."); *see generally Younger v. Harris*, 401 U.S. 37, 44-45 (1971) ("'Our Federalism' . . . [is] a system in which . . . the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.").

With that in mind, the fundamental question for a district court when considering whether the conditional writ has been complied with is whether the state has fully vindicated the prisoner's rights, thereby rendering an unconditional writ unnecessary. Indeed, what an unconditional writ accomplishes—release from unconstitutional custody—is precisely what a conditional writ encourages the state to accomplish on its own, and if a state accomplishes this goal, the mission of the district court is at an end. A district court could not, for example, issue a conditional writ that required the state

*both* to vacate the conviction *and* to conduct a new trial within a certain period of time. By subjecting the state to more federal intrusion than would an unconditional writ, such a conditional writ would not be an "accommodation[] accorded to the state." *Satterlee v. Wolfenbarger*, 453 F.3d 362, 369 (6th Cir. 2006). More significantly, such an order would do more than vindicate the prisoner's constitutional rights and, because it would usurp from the state courts the power to ensure, in the first instance, that a *new* state trial complies with constitutional standards, it would also run squarely into the exhaustion problems addressed by *Pitchess v. Davis*, 421 U.S. 482 (1975), which held that a district court lacks authority to supervise a retrial conducted pursuant to a conditional writ of habeas corpus. *Id.* at 490.

Because a vacation of an unconstitutional conviction fully vindicates a prisoner's rights, it necessarily complies with a conditional writ—even if the writ does not explicitly provide vacation as an option. *Pickens v. Howes*, 549 F.3d 377, 379, 384 (6th Cir. 2008) (holding that, where conditional writ required the state to allow the prisoner to withdraw his guilty plea, the prisoner's constitutional rights "were fully vindicated by the state court's decision vacating his . . . conviction."). As a result, although there is no question that a district court retains jurisdiction to determine whether the conditional writ has been complied with, *Gentry v. Deuth*, 456 F.3d at 692, the scope of that inquiry is limited by the threshold question of whether there exists an unconstitutional conviction. *Eddleman* follows from this straightforward principle, holding that, where the state has vacated the unconstitutional conviction, it has *ipso facto* complied with the conditional writ and the district court's jurisdiction is at an end. *See Eddleman v. McKee*, 586 F.3d 409, 413 (6th Cir. 2009). Accordingly, without first considering whether D'Ambrosio's conviction had been vacated, *Pitchess* and *Fisher* cannot be distinguished on the grounds that, in those cases, the state complied with the conditional writ.

Second, when later considering whether the state had vacated D'Ambrosio's conviction, the majority erroneously focuses on the state's confused arguments and actions before the district court. To be sure, the state conceded through its actions that

the district court had jurisdiction to issue the unconditional writ. But that is neither here nor there. Independent of the state's concession, the district court had "an independent obligation to investigate and police the boundaries of [its]own jurisdiction," and "no action of the parties can confer subject-matter jurisdiction upon a federal court" where it is lacking. *In re Cassim*, 594 F.3d 432, 439 (6th Cir. 2010) (quoting *Douglas v. E.G. Baldwin & Assocs., Inc.*, 150 F.3d 604, 607 (6th Cir. 1998)); *Ins. Corp. of Ireland v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 702 (1982). The prosecution's actions and beliefs do not settle the question, and that conclusion is punctuated in this case, where the prosecution's understanding of the legal landscape has been consistently faulty.

Notwithstanding the state's confused representations to the district court and to this court, it is clear that D'Ambrosio's conviction had been vacated prior to the issuance of the unconditional writ. Contrary to the majority's suggestion that the state-court judge merely used the term "vacate" on occasion and to no real effect, the record manifests that both the state court and the parties involved were in agreement that the unconstitutional conviction had been vacated and treated it as such, thereby placing this case squarely within the holding of *Eddleman*. 586 F.3d at 412.

On October 23, 2008, D'Ambrosio was transferred from the state penitentiary in Youngstown to Cuyahoga County Jail, pending the result of the retrial. On February 17, 2009, D'Ambrosio filed a motion in state court to set bail, stating: "Defendant is being held in jail without bail, pending trial of this case. At his arraignment on October 14, 1988, bail was set at $200,000, cash. He was convicted and sentenced, but the conviction was later vacated." In its brief in opposition to D'Ambrosio's motion, filed on February 20, 2009, the prosecution conceded that D'Ambrosio was no longer being held pursuant to an existing conviction and sentence. Although the prosecution did not use the term "vacated" in its brief, it agreed that the conviction had been "overturned" and no longer had any effect.

More to the point, the state court was also in agreement that the conviction had been vacated. In its February 24, 2009, order granting bail, the state court twice noted

that D'Ambrosio's conviction had been vacated, not in mere passing, but as the primary justification of its decision on the matter. The state court rejected the prosecution's argument that the presumption of guilt was great in light of his prior conviction solely because "[t]hat conviction has since been vacated." In deciding to grant bail, the state court also explicitly relied on the fact that D'Ambrosio had no prior felony record: "[t]he defendant stands before the court today as he did at his October 14, 1988 arraignment, with no prior felony record."

In my view, as of February 24, 2009, all the parties were in agreement that D'Ambrosio's conviction had been vacated, and they were correct—the record reflects that the prior conviction had no continuing effect by this time. Indeed, shortly after the state court's order, D'Ambrosio made bail and was released, pending the outcome of his retrial—activity clearly inconsistent with a conclusion that he remained in custody pursuant to an unconstitutional conviction, as opposed to a new indictment. Therefore, because D'Ambrosio's prior conviction was no more, the district court lacked jurisdiction to issue the unconditional writ.

II

Because I would hold that the district court lacked jurisdiction to issue the unconditional writ, as a matter of course, I would hold that it lacked jurisdiction to revisit its order, pursuant to a Rule 60(b) motion, and change its mind as to whether reprosecution should be barred. *See Charter Tp. of Muskegon v. City of Muskegon*, 303 F.3d 755, 762 (6th Cir. 2002) ("A Rule 60(b) motion is considered a continuation of the original proceeding. If the district court had jurisdiction when the suit was filed, it has jurisdiction to entertain a Rule 60(b) motion.") (internal quotation omitted). However, I would reach the same outcome, albeit on non-jurisdictional grounds, even if I agreed that the district court had jurisdiction to issue the unconditional writ.

*Pitchess* makes clear that Rule 60(b) cannot be used to circumvent section 2254's exhaustion requirement, and its holding directly controls this case. Although exhaustion is non-jurisdictional in nature, *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005), it similarly bars access to federal courts unless expressly waived by the state, 28 U.S.C.

§ 2254(b)(3), and there can be no question that the state did not so waive it here.[1]  In *Pitchess*, the district court granted the petitioner a conditional writ that ordered the state to commence a retrial, and the state began retrial proceedings, in full compliance with the conditional writ.  421 U.S. at 483–84.  During this time, the petitioner discovered that crucial evidence had been destroyed prior to the issuance of the conditional writ.  *Id*. at 484.  The petitioner then returned to federal court and requested, pursuant to Rule 60(b), an order barring reprosecution.  *Id*. at 485.  The district court granted the order and the Ninth Circuit affirmed, reasoning that, because the district court would have granted the requested relief if it had known about the destroyed evidence at the time it issued the conditional writ, Rule 60(b) justified the grant of relief after the fact.  *Id*. at 485–86, 489.  That justification was flatly rejected by the Supreme Court, which held that Rule 60(b) does not alter the statutory exhaustion requirement that applies to habeas proceedings:

> Respondent failed to exhaust available state remedies on the claim which formed the basis for the unconditional writ, and he is entitled to no relief based upon a claim with respect to which state remedies have not been exhausted. Neither Rule 60(b), 28 U.S.C. § 2254, nor the two read together, permit a federal habeas court to maintain a continuing supervision over a retrial conducted pursuant to a conditional writ granted by the habeas court.

*Id*. at 490.  The key language—"[n]either Rule 60(b), 28 U.S.C. § 2254, nor the two read together"—is in reality just as applicable to this case as it sounds, and the majority's attempts to distinguish *Pitchess* simply fall flat.

First, the majority argues that, in *Pitchess*, the state had complied with the conditional writ, whereas here, the State of Ohio did not.  Even assuming that statement were true, it makes no difference.  To be sure, the state's purported failure to comply with the conditional writ does impact the question of whether the district court had jurisdiction to issue the unconditional order—if the conviction remains in effect, then

---

[1]In its brief, the state heavily relies on *Pitchess* and its holding regarding exhaustion.  Appellant's Br. at 18–20.  That the state appeared to mistakenly conclude that *Pitchess* was about jurisdiction is not an express waiver of the exhaustion arguments it included in its brief, and, in any case, this court may consider the issue *sua sponte*.  *See Granberry v. Greer*, 481 U.S. 129, 133–34 (1987).

the district court retains jurisdiction. However, any failure to comply with the initial conditional writ has absolutely no bearing on the question of the district court's authority to issue a new order *after the unconditional writ has issued*. Indeed, it is the fact that the state in *Pitchess* complied with the conditional writ that makes it on point with this case. In *Pitchess*, the state's compliance with the conditional order is what vindicated the prisoner's rights—as though an unconditional writ has issued—and ended the district court's continued authority over the matter. Here, the unconditional writ, in fact, issued. There is absolutely no question that, at the time D'Ambrosio filed his Rule 60(b) motion, his constitutional rights had been fully vindicated. Accordingly, at the time the motions were filed, D'Ambrosio was in the exact same position as the petitioner in *Pitchess*. Any issues with the earlier conditional writ are simply irrelevant.

Second, the majority argues that, because D'Ambrosio based his argument for barring reprosecution on the *Brady* claim that formed the basis of the conditional writ and not on events that occurred after the district court granted the unconditional writ, this case "does not present the same sort of exhaustion issues" as *Pitchess*. That attempted distinction is both factually and legally incorrect. A reading of the *Pitchess* opinion makes clear, just as is the case here, the requested relief was based on events that occurred *before* the district court's original order. Indeed, the majority's prior-events argument was the precise justification put forth by the Ninth Circuit—and resoundingly rejected by the Supreme Court. Next, D'Ambrosio certainly did not premise his argument for barring reprosecution on the same *Brady* claim that had resulted in the earlier habeas relief. In his Rule 60(b) motion, D'Ambrosio's argument was not that the state withheld exculpatory information in his 1988 trial, but rather that, without the ability to cross-examine the state's dead witness, he could not mount an adequate defense at retrial. That is not the old *Brady* claim. It is an entirely new substantial-delay claim. *See United States v. Marion*, 404 U.S. 307, 324 (1971) (noting that "the Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to [the defendant's] rights to a fair trial," and distinguishing such a claim from *Brady*).

D'Ambrosio did not present this claim to the state courts and, as a result, the district court was without authority to consider it. *Pitchess*, 421 U.S. at 489–90.

D'Ambrosio made the argument—which the majority appears to buy in full—that his new claim is actually the old claim because there is a causal connection between the two. True, D'Ambrosio's new claim was in some sense caused by the state's 1988 violation of *Brady*: had the state done things correctly the first time around, the witness would have been alive and available for an effective cross examination (assuming no other judicial interruption with a concomitant delay). Of course, that is the case every time there is any problem with a retrial, yet federal courts may not review even such connected issues until the *new* judgment is final and such issues are raised in a *new* habeas petition following an unsuccessful resort to all available state remedies. *See Pitchess*, 421 U.S. at 486–87; 28 U.S.C. §§ 2241, 2254. In the same sense, the new claim was affected by the state's failure to commence a trial within 180 days: had it done so, the witness might not have expired before the retrial. But that speaks only to, perhaps, the state's culpability; it does not somehow convert D'Ambrosio's unexhausted, new claim—based upon different facts and legal standards—into his old *Brady* claim. Further, that sort of causation was equally at issue in *Eddleman*, where the petitioner's Rule 60(b) motion argued that he was prejudiced by the state's delay in conducting his retrial, in violation of the conditional writ. Although the causation argument D'Ambrosio makes here was equally applicable in *Eddleman*, this court held that "the district court proceeded effectively to adjudicate a speedy-trial claim that had never been presented to, much less ruled upon by, the Michigan state courts. With due respect, the district court acted out of turn in doing so." 586 F.3d at 413. That holding applies with full force here.

The majority's reliance on *Satterlee* and *Girts* is misguided. Notably, because the Supreme Court's decision in *Pitchess* is precisely on point, even if those cases stand for the proposition the majority credits them with, they are wrongly decided to the extent they conflict with *Pitchess*. But that is a non-issue, because, contrary to the majority's assertion, *Satterlee* and *Girts* neither hold nor suggest that a district court may issue new

orders or materially amend old ones once an unconditional writ has been granted and complied with. In *Satterlee*, the district court granted an unconditional writ that released the prisoner from custody. *Satterlee*, 453 F.3d at 365. The state appealed, and this court affirmed the grant of the unconditional writ, remanding to the district court to clarify whether its pre-release order was intended to allow the state to reprosecute, which was not made clear in the court's initial order. 453 F.3d at 370 ("[W]e instruct the district court to *clarify* on remand which of these meanings it *intended*, and if it *meant* to forbid reprosecution, to justify its conclusion.") (emphasis supplied). The *Satterlee* court, then, did not suggest that a district court may issue a new order after the conviction has been vacated, but only that it can clear up an earlier, vague decision. And in *Girts*, this court similarly held that the district court could clarify its order granting an unconditional writ, where two days later and hours after the release of the petitioner, the court explained that it did not intend to bar reprosecution in that initial order, and that explanation was not contrary to the text of the initial order. *Girts v. Yanai*, 600 F.3d 576, 581 (6th Cir. 2010). Here, on the other hand, the district court first issued an order that explicitly declined to bar reprosecution and then later, after the conviction had been vacated, issued a new order barring reprosecution. This is fundamentally at odds with *Girts*, which explicitly recognized the applicability of *Pitchess* and made the narrow scope of its holding abundantly clear:

> We do not hold that a district court can materially amend its judgment after the state has released a petitioner, and we acknowledge binding Supreme Court authority that a habeas court does not maintain "continuing supervision over a retrial conducted pursuant to a conditional writ granted by the habeas court." *Pitchess v. Davis*, 421 U.S. 482, 490 (1975). In the unique factual setting of this case, we simply read the November 5, 2008 order as clarifying the November 3, 2008 order, in which the district court granted an unconditional writ and in which the district court was free to decide whether to bar retrial.

600 F.3d at 582. Neither *Girts* nor *Satterlee*, then, can be read to allow a district court to issue new orders after the underlying conviction has been vacated, but rather that the district court retains only the power to elucidate an earlier, vague decision. The *Girts* court noted that the limits of this clarification power must fall short of "materially

amend[ing]" an earlier judgment, which is precisely what the district court did here. Accordingly, even if I agreed that the district court retained jurisdiction to grant the unconditional writ, I would reverse its later order barring reprosecution pursuant to *Pitchess*—that order blatantly exercises exactly the type of "continuing supervision" barred by *Pitchess* and contemplated by *Girts*.

### III

The majority correctly notes that the warden does not challenge the district court's order as an abuse of discretion. That, in my view, was bad strategy, albeit consistent with the state's body of conduct over the past twenty-odd years. In any case, the issue was neither briefed nor otherwise raised by either party, and that is sufficient to end the inquiry. I note that it is far from apparent to me that the death of the *prosecution*'s star witness before D'Ambrosio's retrial prejudiced him to such an extent that the extreme measure of barring the retrial altogether was justified. At first blush, the witness's death appears to be beneficial to D'Ambrosio, particularly in light of the state court's decision not to allow the witness's prior testimony to be presented at the retrial. Further, even if D'Ambrosio were to be greatly prejudiced at retrial by the state's misconduct, he could bring that due-process claim to the state courts on direct review. Because any potential prejudice appears to be curable through the ordinary process, the district court's decision to bar reprosecution is, if not an abuse of discretion, at least highly suspect. *Scott v. Bock*, 576 F. Supp. 2d 832, 837–38 (E.D. Mich. 2008) ("As the term 'extraordinary' applies, courts should . . . bar[] reprosecution sparingly, reserving this drastic remedy for the most outrageous cases . . . . Unless the constitutional violation is not redressable at a new trial, or the second trial would be especially unjust, the bar on reprosecution is difficult to justify.") (citations omitted).

### IV

In my view, the majority's opinion is unmoored from both the facts of this case and the applicable case law of both this circuit and the Supreme Court. Moreover, I find particularly troubling that the majority opinion permits federal courts to order habeas relief not only based on the conditions leading to an underlying conviction, but also

based on the conditions of an ongoing state criminal proceeding.  Because habeas relief may be granted only from final criminal *judgments*, and only under narrow circumstances,  *see* 28 U.S.C. §§ 2241, 2254, I remain unconvinced that federal courts, under the cloak of habeas jurisdiction, have the authority to interfere with a state's ongoing prosecutorial efforts, and that is precisely what the district court did here.  I therefore respectfully dissent.