RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 25a0279p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

MALIK ALLAH-U-AKBAR, fka Odraye G. Jones,
                          *Petitioner-Appellant*,

        *v.*                                                          No. 24-3581

MARGARET BRADSHAW, Warden,
                          *Respondent-Appellee*.

─────────────────

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:03-cv-01192—Solomon Oliver, Jr., District Judge.

Argued:  April 17, 2025

Decided and Filed:  October 9, 2025

Before:  MOORE, COLE, and GRIFFIN, Circuit Judges.

─────────────────

**COUNSEL**

**ARGUED:**  Kathryn Bailey, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Pittsburgh, Pennsylvania, for Appellant.  Katie Rose Talley, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.  **ON BRIEF:**  Kathryn Bailey, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Pittsburgh, Pennsylvania, for Appellant.  Katie Rose Talley, Charles L. Wille, BRENDA S. Leikala, T. Elliot Gaiser, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

        MOORE, J., delivered the opinion of the court in which COLE, J., concurred.  GRIFFIN, J. (pp. 18–25), delivered a separate dissenting opinion.

_____

**OPINION**

_____

KAREN NELSON MOORE, Circuit Judge. In a prior appeal, this court granted Petitioner-Appellant Malik Allah-U-Akbar a conditional writ of habeas corpus, "vacating [his] death sentence unless the State of Ohio conducts a new penalty-phase proceeding within 180 days of remand." *Jones v. Bradshaw*, 46 F.4th 459, 489 (6th Cir. 2022). The state did not comply with the writ. The district court then converted this conditional writ to an unconditional writ. The unconditional writ ordered the state "to vacate the death sentence imposed by the Ashtabula County, Ohio, Court of Common Pleas . . . and unconditionally release Jones from custody no later than five business days from the date of entry of" the order entered on February 29, 2024. *Jones v. Bradshaw*, No. 1:03 CV 1192, 2024 WL 895153, at *11 (N.D. Ohio Feb. 29, 2024). The state did not fully comply with the unconditional writ until May 29, 2024, roughly ninety days after the unconditional writ was entered. In response, Allah-U-Akbar filed a motion for relief from the unconditional writ, and sought as a sanction for noncompliance an order barring the state from reprosecuting the death penalty. The district court denied this request on the merits.

For the reasons that follow, although we agree with Allah-U-Akbar that we have jurisdiction over this appeal, we nevertheless **AFFIRM** the judgment of the district court.

**I. BACKGROUND**

Our previous opinion that granted Allah-U-Akbar's conditional writ accurately and thoroughly discusses the relevant factual and procedural history prior to the mandate issued from that appeal. *Jones*, 46 F.4th at 465–69. We pick up where it leaves off. On August 22, 2022, we remanded this "case to the district court with instructions to issue a writ of habeas corpus vacating [Allah-U-Akbar's] death sentence unless the State of Ohio conducts a new penalty-phase proceeding within 180 days of remand." *Id.* at 489. This was a conditional writ. "A conditional writ of habeas corpus delays a defendant's release 'to afford the State an opportunity to remedy the specific constitutional violation identified by the [federal] court.'" *Smith v. Davis*,

Nos. 25-3381/3383, 2025 WL 1826652, at *4 (6th Cir. July 2, 2025) (Order) (quoting *Jennings v. Stephens*, 574 U.S. 271, 285–86 (2015) (Thomas, J., dissenting)). "If the state fails to satisfy the writ's condition within the time set, the writ 'springs to life' and requires the petitioner's immediate release from custody." *Id.* (quoting *Gentry v. Deuth*, 456 F.3d 687, 692 (6th Cir. 2006)).

There is no dispute that the district court entered a conditional writ with which the state did not comply. Following a series of orders granting extensions to the time to comply with the writ (because of delays related to state-court judicial recusals, defense preparations, and hearings related to Allah-U-Akbar's competency), the state had until November 22, 2023, to comply with the conditional writ. *Jones v. Bradshaw*, No. 1:03 CV 1192, 2024 WL 3161944, at *1 (N.D. Ohio June 24, 2024); *see also Jones*, 2024 WL 895153, at *1–5. The state did not comply with the November 22, 2023, deadline, and so Allah-U-Akbar filed a motion for an unconditional writ. *Jones*, 2024 WL 895153, at *5. The motion sought that the court: "(1) issue an unconditional writ of habeas corpus, because the State has failed to conduct a resentencing proceeding within the time specified in the Sixth Circuit's conditional writ and subsequent order granting Respondent's request for an extension of time; and (2) prohibit the State from conducting a resentencing proceeding or at a minimum, from seeking the death penalty." *Id.*

The district court granted in part and denied in part this request. The district court granted Allah-U-Akbar's request for unconditional release, relying on circuit precedent holding that a district court retains jurisdiction to ensure compliance with a conditional writ and that failure to comply "*requires* the petitioner's release from custody." *Id.* at *5–6 (quoting *Satterlee v. Wolfenbarger*, 453 F.3d 362, 369 (6th Cir. 2006) (quoting *Fisher v. Rose*, 757 F.2d 789, 791 (6th Cir. 1985))). There was no dispute that Allah-U-Akbar suffered from the unconstitutional death sentence at the time of the order on February 29, 2024, and so the district court ordered his release. *Id.* The district court denied Allah-U-Akbar's request to bar the state from conducting a new penalty phase or at least from pursuing the death penalty. *Id.* at *6–11. Although the state was noncompliant with the conditional writ, "the state-court record reveal[ed] proceedings straining under the weight of a federal court's mandate and exceedingly complex legal, procedural, and administrative issues—such as [Allah-U-Akbar's] competency to stand trial and

his request to represent himself in a capital case; the burden on the defense to investigate and present mitigation evidence in a case more than a quarter-of-a-century old; and containing pre-trial publicity amidst intense public interest." *Id.* at *8. The district court also found that many of the delays in the state court were attributable to Allah-U-Akbar himself. *Id.* at *9.

Accordingly, the district court entered an unconditional writ ordering the state "to vacate the death sentence imposed by the Ashtabula County, Ohio, Court of Common Pleas . . . and unconditionally release [Allah-U-Akbar] from custody no later than five business days from the date of entry of" the order entered on February 29, 2024. *Id.* at *11. No party disputes that the district court had the authority to enter this order on February 29, 2024, when Allah-U-Akbar (1) continued to suffer from the constitutionally infirm death sentence and (2) remained in state prison rather than county jail.

On March 1, 2024, the next business day after the entry of the unconditional writ, "the county prosecutor filed in the state trial court a request for an arrest warrant on the original 1998 Indictment in [Allah-U-Akbar's] case." *Jones*, 2024 WL 3161944, at *1. Then, on March 5, 2024, three business days after entry of the unconditional writ, "the Warden released [Allah-U-Akbar] into the custody of the Ashtabula County Sheriff." *Id.* But no other action was taken to effectuate the district court's order to vacate Allah-U-Akbar's unconstitutional death sentence. *Id.* at *1–2. More than two weeks later,[1] the county prosecutor filed a motion to vacate the death sentence. *Id.* at *2. The state trial court granted the motion on May 29, 2024, "formally vacat[ing] the sentence through an entry in its docket." *Id.*

The district court entered judgment on the unconditional writ on June 24, 2024, even though its memorandum and opinion had issued on February 29, 2024. R. 299 (Judgment Entry) (Page ID #14118). The district court did so in response to Allah-U-Akbar's motion for the district court to either: (1) enter a judgment pursuant to Rule 58(a) or (2) extend the time to appeal the February 29, 2024, order. R. 298 (06/24/24 Order at 1) (Page ID #14111). The district court agreed with Allah-U-Akbar (over the Warden's objections) that a separate

---

[1]Between the time that Allah-U-Akbar was released from prison and the filing of the county prosecutor's motion, Allah-U-Akbar filed an appeal in his state case. *Jones*, 2024 WL 3161944, at *2. "[T]he [state] court therefore stayed all proceedings, including the resentencing hearing it had set for May 20, 2024." *Id.*

judgment was necessary following the district court's order granting in part Allah-U-Akbar's motion for an unconditional writ. *Id.* at 4–5 (Page ID #14114–15). The district court found that "it appears that a separate judgment entry for this court's February 29, 2024, decision granting the unconditional writ was required under Civil Rule 58(a)." *Id.* at 5 (Page ID #14115). Because the district court's grant of Allah-U-Akbar's "motion for an unconditional writ effectively amended the Sixth Circuit's judgment granting the conditional writ, a separate judgment entry serves Rule 58(a)'s goal of 'clariy[ing] what the ultimate result [was], benefiting both the parties (for purposes of enforcement and clarity of legal obligation) and the judicial system (for providing a clear time period for taking an appeal)[,]' and was required." *Id.* (alterations in original) (quoting *Kunz v. DeFelice*, 538 F.3d 667, 673 (7th Cir. 2008)). The district court also granted, in the alternative, Allah-U-Akbar's request for an extension of time to file an appeal related to the February 29, 2024, order. *Id.* at 6–7 (Page ID #14116–17).

Allah-U-Akbar timely appealed both the February and June orders, R. 300 (Notice of Appeal at 1–2) (Page ID #14119–20), and the parties have briefed the merits of both orders, *see, e.g.*, Akbar Br. at 3, 61; Warden Br. at 19, 24.

## II.  HABEAS JURISDICTION[2]

On April 17, 2025, we ordered the parties to file supplemental briefing "addressing whether the federal courts continue to have subject-matter jurisdiction over this case." D. 31. We raised the issue of whether we retained subject-matter jurisdiction over this appeal after the state fully complied with the district court's unconditional writ and vacated Allah-U-Akbar's sentence. *See Mason v. Mitchell*, 729 F.3d 545, 549–50 (6th Cir. 2013) (clarifying the jurisdictional limits of the habeas statutes).

We hold that we have jurisdiction to reach the merits of Allah-U-Akbar's appeal as it relates to both the unconditional writ entered in February 2024 and the Rule 60(b) order entered in July 2024. There are two ways to think about jurisdiction in this appeal. Under both scenarios, we have jurisdiction to address the merits of Allah-U-Akbar's appeal. In the first,

---

[2]The Warden separately raises a standing argument. Warden Suppl. Br. at 7–8. The crux of this argument is that the Warden has no control over Allah-U-Akbar's present confinement. *Id.* As explained below, Allah-U-Akbar does not challenge his current confinement. In this context, the Warden's arguments miss the mark.

district courts have jurisdiction to enter an unconditional writ when a state fails to comply with the terms of a conditional writ, and so we may properly address Allah-U-Akbar's timely appeal of this judgment.  In the second, district courts also have jurisdiction pursuant to Federal Rule of Civil Procedure 60(b) to sanction a state for noncompliance with strict terms of a conditional or unconditional writ.  So we may also reach the merits of Allah-U-Akbar's Rule 60(b) motion seeking relief from the state's apparent noncompliance with the unconditional writ entered on February 29, 2024.  We explain this rationale in greater detail below.

**A.  February 29, 2024 Order**

Because the district court had jurisdiction to enter an unconditional writ on February 29, 2024, we have jurisdiction to hear an appeal of that order.  That the state later complied with the conditional writ does not strip us of jurisdiction.  At the time that the district court entered the unconditional writ, Allah-U-Akbar indisputably suffered from an unconstitutional death sentence.  Even though the state subsequently complied with the unconditional writ (albeit almost three months late), under binding precedent, we retain jurisdiction to review the decision to issue an unconditional writ but decline to bar the state from pursuing the death penalty.

A straightforward application of *Mason v. Mitchell* resolves any concern about our jurisdiction to hear Allah-U-Akbar's appeal from the February order.  *Mason* addressed the exact scenario presented by this appeal and held that a court of appeals retains jurisdiction to review a district court's decision to convert a conditional writ to an unconditional writ despite the state's subsequent compliance.  729 F.3d at 549–50.  Simply plugging in the Warden and Allah-U-Akbar for the parties in *Mason* demonstrates the one-to-one fit.  "The [Warden] is correct to point out that federal courts may not exercise 'continuing oversight of subsequent state court proceedings following the state's compliance with a grant of a conditional writ of habeas corpus.'"  *Id.* at 549 (quoting *Girts v. Yanai*, 600 F.3d 576, 581 (6th Cir. 2010)).  "However, '[a] federal district court retains jurisdiction to determine whether a party has complied with the terms of a conditional order in a habeas case.'"  *Id.* (alteration in original) (quoting *Gentry*, 456 F.3d at 692).  "The [Warden's] argument that the district court lacked jurisdiction to consider [Allah-U-Akbar's] motion fails, because [his] claim is that the [Warden] failed to comply with the condition contained in the conditional writ—that the [Warden]" vacate his sentence or

conduct a resentencing hearing by November 22, 2023. *Id.* "As we have explained, conditional writs 'would be meaningless' if a habeas court could not determine compliance with them and order sanctions accordingly." *Id.* (quoting *Satterlee*, 453 F.3d at 369 n.5).

"[Allah-U-Akbar's] subsequent removal from death row by the [Warden] does not render the federal court powerless to enforce the full meaning of the conditional writ." *Id.* "We recognize that a state's compliance with a conditional writ through the vacatur of a petitioner's unconstitutional conviction or sentence within the window of time permitted by the habeas court's order generally will divest the court of jurisdiction." *Id.* at 550 (citing *Eddleman v. McKee*, 586 F.3d 409, 413 (6th Cir. 2009)). "However, if a state fails to release the petitioner from the unconstitutional judgment within the time period prescribed by the conditional writ, the habeas court has jurisdiction to consider the noncompliance and impose sanctions." *Id.* "Accordingly, the district court in this case had jurisdiction to consider whether the [Warden] complied with the conditional writ and whether the death penalty may be sought at the penalty-phase retrial. In turn, we have jurisdiction to consider the district court's judgment." *Id.*

*Mason* firmly and unequivocally establishes that we have jurisdiction to hear Allah-U-Akbar's appeal of the February 29, 2024, unconditional writ. Because the district court had jurisdiction to enter that order, so too do we have jurisdiction to hear the appeal from that judgment. Dismissing the appeal in its entirety based on Allah-U-Akbar's separate appeal of the Rule 60(b) motion would be improper.

## B. Rule 60(b) Order

Addressing jurisdiction under Rule 60(b) is a little more complicated, but ultimately a straightforward application of binding precedent resolves this dispute as well. Our court addressed this issue in *D'Ambrosio v. Bagley*, which we re-affirmed in *Mason*. *D'Ambrosio*, 656 F.3d 379 (6th Cir. 2011); *Mason*, 729 F.3d at 550. Those cases held that district courts have jurisdiction to ensure compliance with either a conditional or unconditional writ. If a state is noncompliant with the writ, then the district court may impose sanctions pursuant to Rule 60(b) even after the writ is fully complied with.

As applied here, because the district court had jurisdiction to enter the writ initially, it retained jurisdiction under Rule 60(b) to provide relief from that judgment and sanction the state's noncompliance. This remained true even after the state belatedly complied with the order. Although a district court may not sanction a state for actions or events that take place after compliance with a conditional or unconditional writ, a district court nevertheless may consider events up to the point of compliance. Here, that was May 29, 2024, nearly three months after the district court initially entered its unconditional writ. We see no reason to stray from the rationale announced in *D'Ambrosio* and *Mason*.

The Warden argues that the district court lacked jurisdiction "because the federal courts' jurisdiction over [Allah-U-Akbar] ended once [his] unconstitutional death sentence was vacated." *See Mason*, 729 F.3d at 549; *see* Warden Suppl. Br. at 3–4. The Warden "is correct to point out that federal courts may not exercise 'continuing oversight of subsequent state court proceedings following the state's compliance with a grant of a conditional writ of habeas corpus.'" *Mason*, 729 F.3d at 549 (quoting *Girts*, 600 F.3d at 581). "However, '[a] federal district court retains jurisdiction to determine whether a party has complied with the terms of a conditional order in a habeas case.'" *Id.* (alteration in original) (quoting *Gentry*, 456 F.3d at 692). "As we have explained, conditional writs 'would be meaningless' if a habeas court could not determine compliance with them and order sanctions accordingly." *Id.* (quoting *Satterlee*, 453 F.3d at 369 n.5).

This basic rule applies with equal force when a petitioner seeks relief from an unconditional writ with which the state has failed to comply (or belatedly complied). *D'Ambrosio*, 656 F.3d at 388–90. "It has been long established that no independent federal jurisdictional basis is needed to support a Rule 60(b) motion proceeding. A Rule 60(b) motion is considered a continuation of the original proceeding. If the district court had jurisdiction when the suit was filed, it has jurisdiction to entertain a Rule 60(b) motion. This jurisdiction is not divested by subsequent events." *Id.* at 388 (quoting *Charter Township of Muskegon v. City of Muskegon*, 303 F.3d 755, 762 (6th Cir. 2002)). "This supports the district court's continuing jurisdiction over its grant of an unconditional writ of habeas corpus pursuant to a Rule 60(b) motion as long as it had jurisdiction to grant the unconditional writ in the first place[.]" *Id.*

As *D'Ambrosio* explains, the decisions in *Girts* and *Satterlee* suggest "that a determination regarding reprosecution is connected to the unconditional writ, and any determination to issue the writ, including a ruling on a Rule 60(b) motion for relief from judgment, necessarily involves contemplation of whether to bar reprosecution." *Id.* at 389.

In short, so long as a district court had jurisdiction to bar reprosecution when it entered a conditional or unconditional writ of habeas corpus, it may provide relief from the writ pursuant to Rule 60(b), even if the unconstitutional judgment was vacated after entry of the writ. This is appropriate so long as the request is sought as a sanction for the state's noncompliance with the writ. *See Satterlee*, 453 F.3d at 370; *Girts*, 600 F.3d at 580–82; *D'Ambrosio*, 656 F.3d at 388–90; *Mason*, 729 F.3d at 549–50. Because the state here did not comply with the district court's unconditional writ until May 29, 2024, nearly three months after it ordered the state to vacate Allah-U-Akbar's sentence within five business days of February 29, 2024, the district court had jurisdiction to consider sanctions pursuant to Rule 60(b). This is true despite the fact that the state later vacated Allah-U-Akbar's unconstitutional sentence.

The procedural history of *D'Ambrosio* is instructive on this point. The district court in *D'Ambrosio* entered a conditional writ in July 2004, "requiring the state either to set aside D'Ambrosio's convictions and sentences or to conduct another trial." 656 F.3d at 381. A week before the trial was set, the state prosecutor notified defense counsel of key additional evidence, and so the trial was postponed until after the 180-day timeframe established by the conditional writ. *Id.* After conducting an evidentiary hearing on the state's motion to enlarge the timeframe for complying with the conditional writ, the district court denied the motion and issued an unconditional writ. *Id.* at 382. The unconditional writ expunged D'Ambrosio's criminal record but permitted the state to pursue reprosecution to the extent allowed by state law. *Id.*; *see also D'Ambrosio v. Bagley*, 619 F. Supp. 2d 428, 430 (N.D. Ohio 2009).

Before the state could reprosecute, the state's key witness died. *D'Ambrosio v. Bagley*, 688 F. Supp. 2d 709, 712–13 (N.D. Ohio 2010). The state initially withheld this fact from both D'Ambrosio and the district court. *Id.* Shortly after D'Ambrosio learned about the witness's death, he filed a Rule 60(b) motion in the district court asking it "to vacate its April 27 Order and enter a new order barring any reprosecution in connection with" the murder. *Id.* By the time

D'Ambrosio filed his motion and the district court entered its ruling, "[f]or nearly six months, D'Ambrosio ha[d] been physically released from the Ohio State Penitentiary.  For nearly a month, D'Ambrosio ha[d] been free from even jail confinement, in that he ha[d] been released on bond and ha[d] been living with a friend in Cleveland.  Neither the State of Ohio, nor the Cuyahoga County Common Pleas Court, nor the Cuyahoga County Prosecutor, consider[ed] D'Ambrosio to be confined in any manner by the conviction and death sentence that ha[d] been vacated[.]" *Id.* at 714.

Thus, despite the fact that D'Ambrosio was released from confinement and had his convictions vacated pursuant to the district court's unconditional writ, the district court nevertheless granted his Rule 60(b) motion and barred reprosecution.  *Id.* at 735.  The district court's analysis rested on the fact that "it [was] undisputed that, on April 27, 2009, D'Ambrosio was still subject to restraints imposed by virtue of his unconstitutional conviction." *Id.* at 720 n.12.  Because the district court had jurisdiction *then* to grant D'Ambrosio the relief he sought, i.e., a bar on reprosecution of the death sentence, the district court retained jurisdiction pursuant to Rule 60(b) to sanction the state for its substantial inequitable conduct.  *Id.* at 721, 731–32.  We affirmed this decision on appeal.  *D'Ambrosio*, 656 F.3d at 390.

The same logic applies here.  Because the state did not fully comply with either the conditional or unconditional writ until Allah-U-Akbar's sentence was vacated on May 29, 2024, the district court had jurisdiction pursuant to Rule 60(b) to bar reprosecution of the death penalty based on potentially inequitable conduct committed up to the date of compliance.  The conditional writ required the state either to vacate Allah-U-Akbar's unconstitutional sentence or to conduct a new penalty phase by November 22, 2023.  It did neither by this date.  When the district court entered the unconditional writ on February 29, 2024, the district court ordered the state to vacate Allah-U-Akbar's death sentence and release him "from custody no later than five business days from the date of entry of this Order." *See Jones*, 2024 WL 895153, at *11.

This leads to the parties' dispute about when exactly the state complied with the unconditional writ.  In our estimation, the state did not comply with the unconditional writ until May 29, 2024, when the state court formally vacated the sentence on the record.  Although *Eddleman* indicates that a formal order is not necessary to satisfy the demands of the writ, those

additional indicia indicating vacatur are not here.  586 F.3d at 412.  Whereas in *Eddleman*, the state court, local prosecutor, and defense counsel all agreed that the unconstitutional judgment had been vacated, no similar agreement appears here.  *See id.*  As the Warden informed the district court on the docket, its compliance came in fits and spurts.  Initially, the state complied with the order only in part—it released Allah-U-Akbar from custody within five business days of the order.  *See Jones*, 2024 WL 3161944, at *1; *see also* R. 288 (Notice at 1) (Page ID #13295). As the Warden argued below, this did not constitute a vacatur of the unconstitutional sentence because the Warden had no authority to vacate the sentence, only to transfer his person.  R. 292 (Opp'n to Rule 60(b) Mot. at 3) (Page ID #14082) ("[T]he warden possesses no authority to vacate a criminal sentence.").  As such, merely transferring Allah-U-Akbar did not constitute full compliance with the district court's unconditional writ.  As a matter of fact, the state did not comply with the unconditional writ until it formally vacated Allah-U-Akbar's sentence on May 29, 2024.  *Jones*, 2024 WL 3161944, at *1–2; *see also* R. 296 (Notice at 1) (Page ID #14098). Because the state did not fully comply with the district court's unconditional writ until May 29, 2024, Rule 60(b) was the appropriate mechanism for the district court to consider sanctions against the state for its belated compliance.  *See Jones*, 2024 WL 3161944, at *3 n.3 (noting jurisdiction to enter the order pursuant to Rule 60(b)).

The Warden's reliance on *Eddleman* and *Gillispie* does not persuade otherwise.  Warden Suppl. Br. at 3–4.  As we have already explained, the state did not comply with either the conditional or unconditional writ until May 29, 2024.  This means that the district court had jurisdiction to consider all events leading up to that date in assessing the appropriateness of sanctioning the state's belated compliance.  *Girts*, *D'Ambrosio*, and *Mason* explain why *Eddleman* and *Gillispie* do not apply here.

As *Girts* explains, "the holding of *Eddleman* must be seen as merely a sensible reaffirmation of the principle announced in *Fisher v. Rose*, . . . that federal courts do not have continuing oversight of subsequent state court proceedings following the state's *compliance* with a grant of a conditional writ of habeas corpus."  600 F.3d at 581 (emphasis added) (internal citation omitted).  But here, it is indisputable that the state did not comply with the terms of either the conditional writ or the unconditional writ until May 29, 2024.  The conditional writ

required the state to vacate Allah-U-Akbar's sentence or conduct a new penalty hearing by November 22, 2023. It did not do so. The unconditional writ ordered the state to vacate Allah-U-Akbar's sentence within five business days of February 29, 2024. It did not do so. And although the district court determined additional sanctions were not warranted on the merits, it was not without jurisdiction to reach this decision.

*D'Ambrosio* confirms this reading. As *D'Ambrosio* explains, "*Eddleman* is different from" cases like D'Ambrosio's and Allah-U-Akbar's because "[t]he unconstitutional judgment[s] against [them] [were] still subject to the district court's jurisdiction when the district court granted the unconditional writ[s]." 656 F.3d at 387. The issue in *D'Ambrosio* was "further complicated by the fact that the district court did not bar D'Ambrosio's reprosecution when it initially granted the unconditional writ of habeas corpus, but D'Ambrosio's use of Rule 60(b) resolve[d] any further jurisdictional questions." *Id.* at 388. This is because the district court retained jurisdiction "over its grant of an unconditional writ of habeas corpus pursuant to a Rule 60(b) motion as long as it had jurisdiction to grant the unconditional writ in the first place, which it did here." *Id.* The same is true with the district court here in its adjudication of Allah-U-Akbar's Rule 60(b) motion. The district court had jurisdiction through Rule 60(b) to consider the state's belated compliance with the clear terms of its unconditional writ. Without this authority, federal courts would be powerless to ensure that the states comply with properly issued writs.

*Mason* reaffirmed *D'Ambrosio*'s analysis. In *Mason*, "[t]he State argue[d] that the district court lacked jurisdiction to grant Mason relief, because the federal courts' jurisdiction over Mason's case ended once Mason's unconstitutional death sentence was vacated." 729 F.3d at 549. This is the same argument being made by the Warden today. We reject the argument for the same reasons as *Mason*. "[A] federal district court retains jurisdiction to determine whether a party has complied with the terms of a conditional order in a habeas case." *Id.* (quoting *Gentry*, 456 F.3d at 692). "Mason's subsequent removal from death row by the State does not render the federal court powerless to enforce the full meaning of the conditional writ." *Id.* Timely compliance with a writ "generally will divest the court of jurisdiction. However, if a state fails to release the petitioner from the unconstitutional judgment within the time period prescribed by

the conditional writ, the habeas court has jurisdiction to consider the noncompliance and impose sanctions." *Id.* at 550 (citation omitted). "Accordingly, the district court in this case had jurisdiction to consider whether the State complied with the conditional writ and whether the death penalty may be sought at the penalty-phase retrial." *Id.* And, as already explained, *D'Ambrosio* holds that this reasoning applies with equal force after entry of an unconditional writ with which the state does not timely comply. *See* 656 F.3d at 387–88.

It is for these same reasons that *Gillispie* does not control here. The court in *Gillispie* stated that "the district court's assertion of a prospective interest in the conditional writ's enforcement is flatly inconsistent with our decision in *Eddleman*." *Gillispie v. Warden, London Corr. Inst.*, 771 F.3d 323, 328 (6th Cir. 2014). *Gillispie* is different on the facts and in its procedural posture. *Id.* at 326. Unlike here, the state in *Gillispie* followed all of the conditions of the writ within the time prescribed by the conditional writ. *Id.* Moreover, the district court in *Gillispie* never filed an unconditional writ as a sanction for the state's noncompliance with a conditional writ.

*Gillispie* should not be read more broadly to stand for the proposition that a district court has no jurisdiction to entertain a Rule 60(b) motion when the state has failed to comply with an unconditional writ in the timeframe demanded by that writ. When *Gillispie* states that a district court cannot "continue to enforce the terms of a conditional writ after the petitioner is no longer in custody pursuant to an unconstitutional judgment[,]" it must be read as simply reaffirming the basic proposition that timely compliance with a writ ends federal jurisdiction over that writ. *Id.* at 329. Reading *Gillispie* and *Eddleman* more broadly runs headlong into *Mason*, *D'Ambrosio*, and *Girts*. *Mason* reaffirmed *D'Ambrosio* and *Girts* that district courts have jurisdiction under Rule 60(b) to ensure that a writ is enforced. To whatever extent *Gillispie* tries to distinguish *D'Ambrosio*, it cannot be read to limit district courts from enforcing a writ where the state is noncompliant with the exact terms of the writ. Even if *Gillispie* intended to stand for a broader proposition, *Mason* is the earlier published decision, so it controls. *See Salmi v. Sec'y of Health & Hum. Servs.*, 774 F.2d 685, 689 (6th Cir. 1985).

In sum, *Girts*, *D'Ambrosio*, and *Mason* explain why we have jurisdiction to hear Allah-U-Akbar's appeal from the district court's Rule 60(b) order. Because the state failed to comply

with the terms of the district court's unconditional writ, the district court had jurisdiction to consider sanctions.  The district court could consider only the events leading up to the state's compliance with the writ on May 29, 2024.  Accordingly, the district court had jurisdiction when it denied Allah-U-Akbar's motion on the merits, and so the panel also has jurisdiction on appeal.

## III.  ANALYSIS

On the merits, we affirm the district court's decision to deny Allah-U-Akbar's request to bar reprosecution of the death penalty.  We affirm both the February 29, 2024, unconditional writ and the June 24, 2024, order on Allah-U-Akbar's Rule 60(b) motion.

## A.  February 29, 2024 Order

Allah-U-Akbar challenges the district court's conclusion that he did not demonstrate extraordinary circumstances justifying a bar on the reprosecution of the death penalty when the district court issued the unconditional writ in February 2024.  Akbar Br. at 3.  Although "the district court's factual findings must be reviewed for clear error, the legal conclusion concerning whether those facts rise to the level of 'extraordinary circumstances' should be reviewed *de novo*."  *Girts*, 600 F.3d at 583 (quoting *United States v. Jeross*, 521 F.3d 562, 581–82 (6th Cir. 2008)).

"[W]hen 'a prisoner is released because a state fails to retry the prisoner by the deadline set in a conditional writ, the state is not precluded from rearresting petitioner and retrying him under the same indictment.'"  *Mason*, 729 F.3d at 551 (quoting *Satterlee*, 453 F.3d at 370).  "Nonetheless, 'in extraordinary circumstances, such as when the state inexcusably, repeatedly, or otherwise abusively fails to act within the prescribed time period or if the state's delay is likely to prejudice the petitioner's ability to mount a defense at trial, a habeas court may forbid reprosecution.'"  *Id.* (quoting *Satterlee*, 453 F.3d at 370).  "[T]roubling" conduct on the part of the state is not enough.  *Id.* at 552 (quoting *Girts*, 600 F.3d at 584–85).  "[E]ven when the state 'undoubtedly did almost nothing to retry [the petitioner] during the 180-day period,'" we have found barring reprosecution of the death penalty inappropriate.  *Id.* at 552 (quoting *Girts*, 600 F.3d at 584–85).  Instead, Allah-U-Akbar must demonstrate that the state engaged in "substantial inequitable conduct."  *Id.* (quoting *D'Ambrosio*, 656 F.3d at 383).  In addition to substantial

wrongdoing or bad faith on the part of the state, substantial inequitable conduct also includes "wrongfully retaining and delaying the production of . . . exculpatory evidence[.]" *Id.* (alteration in original) (quoting *D'Ambrosio*, 656 F.3d at 383).

We agree with the district court that at the time of the unconditional writ, Allah-U-Akbar had not demonstrated that there were extraordinary circumstances justifying a bar on reprosecuting the death penalty. As the district court found, "the state-court record reveals proceedings straining under the weight of a federal court's mandate and exceedingly complex legal, procedural, and administrative issues—such as [Allah-U-Akbar's] competency to stand trial and his request to represent himself in a capital case; the burden on the defense to investigate and present mitigation evidence in a case more than a quarter-of-a-century old; and containing pre-trial publicity amidst intense public interest." *Jones*, 2024 WL 895153, at \*8. Although there were lengthy delays in proceeding with a new penalty phase, many of those delays were attributable to Allah-U-Akbar. *See id.* at \*4, 9. Allah-U-Akbar sought to proceed pro se, which required determining his competency. *Id.* at \*9. Both the state and Allah-U-Akbar sought at various times to disqualify the state trial judge assigned to the sentencing proceedings. *Id.* at \*2, 8. The state-court delays associated with Allah-U-Akbar's competency evaluations and the various disqualification proceedings are undoubtedly troubling. But this series of events is not due to bad faith or wrongdoing on the part of the state, nor does it rise to the level of substantial inequitable conduct that would warrant a bar on the death penalty.

For example, the state's conduct up to February 29, 2024, was unlike the "substantial inequitable conduct" that supported the penalty bar in *D'Ambrosio*. 656 F.3d at 383 (quoting *D'Ambrosio*, 688 F. Supp. 2d at 727–28). There, the state wrongfully withheld evidence that "would have substantially increased a reasonable juror's doubt of D'Ambrosio's guilt," the state repeatedly and wrongfully delayed D'Ambrosio's re-trial, "the State's counsel baselessly attacked the state trial judge," and the state submitted evidence before the federal district court "that, charitably, only [could] be described as 'strain[ing] credulity[.]'" *Id.* (quoting *D'Ambrosio*, 688 F. Supp. 2d at 727–28). If that were not enough, "the man around whom the entire theory of the State's case revolve[d] [was] no longer available for trial, a fact the State knew but withheld from D'Ambrosio, the state court, and" the federal district court. *Id.* (quoting

*D'Ambrosio*, 688 F. Supp. 2d at 727–28). In *D'Ambrosio*, the state repeatedly withheld key information, failed to disclose this information to the petitioner or the court, and thereby substantially prejudiced D'Ambrosio's ability to ensure a fair trial. Although the reasons for delays in Allah-U-Akbar's case are no doubt troubling, *see Jones*, 2024 WL 895153, at *7, the state's actions do not rise to the level of substantial inequitable conduct in a comparable way here. There does not appear to be bad faith or wrongdoing on the part of the state, and Allah-U-Akbar is not similarly prejudiced from undergoing a fair sentencing proceeding.

For these reasons, we affirm the district court's decision to enter an unconditional writ vacating Allah-U-Akbar's unconstitutional sentence, but declining to bar the state from reprosecuting the death penalty.

## B. Rule 60(b) Order

We also affirm the district court's decision denying Allah-U-Akbar's Rule 60(b) motion. We review this decision for abuse of discretion. *Thompson v. Bell*, 580 F.3d 423, 442 (6th Cir. 2009). As explained above, the state did not vacate Allah-U-Akbar's unconstitutional sentence until May 29, 2024, nearly three months after the district court issued the unconditional writ requiring vacatur within five business days of February 29, 2024. Although there was a lengthy delay in compliance with the unconditional writ, Allah-U-Akbar has not demonstrated that the district court abused its discretion when it denied his motion.

The state partially complied with the unconditional writ when it transferred Allah-U-Akbar to the Ashtabula County jail. R. 288 (Notice at 1) (Page ID #13295). A few weeks later, on March 22, 2024, the county prosecutor filed a motion in the state court to vacate Allah-U-Akbar's unconstitutional sentence. R. 296-1 (05/29/24 Judgment Entry) (Page ID #14100). Although this motion came well after the deadline imposed by the unconditional writ, it does not demonstrate bad faith or misconduct on the part of the county prosecutor. The state court did not immediately act on the motion because it believed it lacked jurisdiction to do so. R. 288-2 (03/12/24 Judgment Entry at 1) (Page ID #13298); R. 296-1 (05/29/24 Judgment Entry) (Page ID #14100). That the state court delayed its ruling to ensure its jurisdiction, although perhaps misguided, does not indicate bad faith or wrongdoing. We agree with Allah-U-Akbar that more

could have been done to ensure the unconditional writ was fully complied with in a timely manner. *See* Akbar Br. at 49–50. Ultimately, however, the delay was only temporary, and "resentencing proceedings are advancing." *Jones*, 2024 WL 3161944, at \*5. We agree with the district court's conclusion that no bad faith or "inexcusable neglect" prompted this lengthy delay. *Id.* Although it is troubling that the Warden, the county prosecutor, and the state court did not take accountability to ensure compliance with a federal court's unconditional writ, *see* Akbar Br. at 55–61, this delay does not rise to the level of extraordinary circumstances warranting relief.

Allah-U-Akbar also argues that the state's continued reliance on Dr. James Eisenberg's tainted testimony constitutes an independent basis for granting relief under Rule 60(b)(6). Akbar Br. at 52–55; *see Jones*, 46 F.4th at 467–68 (summarizing Dr. Eisenberg's testimony). Allah-U-Akbar notes that Dr. Eisenberg's testimony was used to assess his competency in the proceedings related to the resentencing phase. Akbar Br. at 53–54. While Allah-U-Akbar argues the use of Dr. Eisenberg's testimony constitutes the same constitutional deficiency, it does not. We first granted Allah-U-Akbar habeas relief only because he received ineffective assistance of counsel at his penalty-phase trial. To whatever extent Allah-U-Akbar believes that the state is conducting a constitutionally infirm resentencing proceeding that does not suffer from that same constitutional defect, that is an independent constitutional claim which Allah-U-Akbar will have the opportunity to litigate in the state courts and potentially in post-conviction proceedings. It is not an independent basis for asserting sanctions against the state for its belated compliance with the unconditional writ.

## IV. CONCLUSION

For these reasons, we **AFFIRM** the judgment of the district court.

---

**OPINION**

---

GRIFFIN, Circuit Judge, dissenting.

I would dismiss and hold that, because the State of Ohio has vacated petitioner's unconstitutional death sentence, we no longer possess subject-matter jurisdiction.[1]  Therefore, I respectfully dissent.

## I.

Subject-matter jurisdiction refers to the types of cases that fall "within a court's adjudicatory authority." *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004).  "We have an independent obligation to check both our own jurisdiction and the district court's," and if we lack jurisdiction, we have "no power but to dismiss the case."  *Taylor v. Owens*, 990 F.3d 493, 496 (6th Cir. 2021).

Congress drew clear boundaries for the federal courts' jurisdiction over habeas cases in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2244 *et seq.* Section 2254(a) allows federal courts to consider a request for habeas relief from "a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  *Id.* § 2254(a).  Likewise, § 2241, which defines the "[p]ower to grant [the] writ," provides that "[t]he writ of habeas corpus shall not extend to a prisoner unless," among other scenarios, "[h]e is in custody in violation of the Constitution or laws or treaties of the United States."  *Id.* § 2241(c)(3).  The term "unless" introduces the condition that limits the rule, meaning the clause that follows "unless" must be satisfied for a petitioner to properly invoke AEDPA.  In other words, "[t]he subject[-]matter jurisdiction of the habeas courts is limited explicitly to petitioners from applicants who allege they are in 'custody' in violation of federal law."  17B Wright & Miller's Federal Practice

---

[1]I would join Section III of the majority's opinion affirming the judgment of the district court were we to possess jurisdiction.

& Procedure § 4262 n.5 (3d ed. last updated May 21, 2025) (quoting Larry W. Yackle, *Explaining Habeas Corpus*, 60 N.Y.U. L. Rev. 991, 999 (1985)).

"An unconstitutional death sentence" can satisfy the in-custody-in-violation-of-federal-law requirement "because it is a judgment imposed without authority." *In re Campbell*, 874 F.3d 454, 462 (6th Cir. 2017) (order) (per curiam). Thus, federal courts may grant a writ of habeas corpus and order the vacatur of unconstitutional death sentences, *see id.*, as we and the district court did here, *see Jones v. Bradshaw*, 46 F.4th 459, 489 (6th Cir. 2022).

But that we once had subject-matter jurisdiction over Allah-U-Akbar's case does not mean we still do. Our obligation to evaluate our jurisdiction is "continuing," *Campanella v. Com. Exch. Bank*, 137 F.3d, 885, 890 (6th Cir. 1998), and "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action," *Watson v. Cartee*, 817 F.3d 299, 302–03 (6th Cir. 2016) (quoting Fed. R. Civ. P. 12(h)(3)).

A vacated sentence is one that "never occurred." *Hewitt v. United States*, 145 S. Ct. 2165, 2174 (2025). And "once the unconstitutional judgment is gone, so too is federal jurisdiction under § 2254." *Eddleman v. McKee* 586 F.3d 409, 413 (6th Cir. 2009); *see also Lane v. Williams*, 455 U.S. 624, 630–32 (1982) (a habeas sentencing appeal becomes moot once the sentence is served, absent collateral consequences); *Brown v. Vanihel*, 7 F.4th 666, 669–71 (7th Cir. 2021) (vacatur of a criminal sentence moots a habeas appeal).

## II.

Our jurisdiction under AEDPA ended when the state court vacated Allah-U-Akbar's death sentence because, at that point, he was no longer "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Applying that plain language to this case's procedural history compels that result.

Our 2022 review of Allah-U-Akbar's petition addressed 14 claims, only one of which we found meritorious: his claim of ineffective assistance of counsel at his penalty-phase trial. *Jones*, 46 F.4th at 470–71, 487–89. Based on that constitutional violation, we held that Allah-U-Akbar was "entitled to a new sentencing hearing" and thus remanded to the district court with

instructions to issue a conditional writ of habeas corpus, "vacating [Allah-U-Akbar's] death sentence unless the State of Ohio conducts a new penalty-phase proceeding within 180 days of remand." *Id.* at 489.**[2]**  So Allah-U-Akbar's death sentence was the sole aspect of his state-court judgment that we found unconstitutional.  Because the state court vacated that unconstitutional death sentence, Allah-U-Akbar is no longer "in custody in violation of [federal law]." 28 U.S.C. § 2254(a).  We therefore lack jurisdiction over his appeal of the district court's entry of an unconditional writ and its order denying Allah-U-Akbar's Rule 60(b) motion.

The principles announced in *Eddleman* support this conclusion.  There, after the state vacated the petitioner's sentence, the district court granted extensive additional relief. *Eddleman*, 586 F.3d at 411–12.  But we held that the district court (and we) lacked jurisdiction to consider the petitioner's motion or appeal because "once the unconstitutional judgment is gone, so too is federal jurisdiction under § 2254." *Id.* at 413–14; *see also Gillispie v. Warden, London Corr. Inst.*, 771 F.3d 323, 328 (6th Cir. 2014) (reaffirming *Eddleman's* § 2254 analysis); *Smith v. Davis*, No. 25-3381, 2025 WL 1826652, at *10–11 (6th Cir. July 2, 2025) (per curiam) (Thapar, J., dissenting) (explaining that "a district court loses jurisdiction if the state vacates the habeas petitioner's unconstitutional conviction that formed the basis of the conditional writ"); *Brown*, 7 F.4th at 669–70 (citing *Eddleman* and *Gillispie* and agreeing that vacatur of the relevant conviction "end[s] federal jurisdiction" over a habeas petition).  Indeed, upon the state's compliance with the writ, "[t]he responsibility of ensuring that he received not only a fair trial, but a timely one, then passed to the [state court] in the first instance." *Eddleman*, 586 F.3d at 413.

It is unimportant that, unlike in *Eddleman*, the district court had jurisdiction to enter the unconditional writ in this case.  The plain text of AEDPA, as *Eddleman* correctly recognized, divests federal courts' jurisdiction immediately upon vacatur, at which point the remainder of a criminal prosecution shifts back to the state, where it belongs. *See id.*  Here, because Allah-U-Akbar is no longer in custody pursuant to a judgment that violates the "Constitution or laws or

---

**[2]**A conditional writ of habeas corpus—the type our remand called for—allows the state time to correct the identified constitutional error. *Satterlee v. Wolfenbarger*, 453 F.3d 362, 369 (6th Cir. 2006). We prefer this type of relief, which respects both comity and state sovereignty and gives the state a chance to cure the error. *Gentry v. Deuth*, 456 F.3d 687, 692 (6th Cir. 2006).

treaties of the United States," we lack jurisdiction over his habeas petition.  The state's failure to timely vacate Allah-U-Akbar's sentence does not alter this conclusion.

III.

The majority posits two bases for federal jurisdiction to review the district court's entry of the unconditional writ and denial of the Rule 60(b) motion.  But neither complies with AEDPA's clear language.

A.

First, the majority reasons that, because the district court had jurisdiction to enter the unconditional writ which ordered the state to vacate the death sentence and unconditionally release Allah-U-Akbar within five business days, we have jurisdiction to determine whether the State of Ohio can be sanctioned for not strictly complying with the writ, even though Allah-U-Akbar's unconstitutional sentence has already been vacated.  In so holding, "the majority erroneously considers compliance with the precise terms of the conditional-writ order to be the primary jurisdictional inquiry."  *D'Ambrosio v. Bagley*, 656 F.3d 379, 391 (6th Cir. 2011) (Boggs, J., dissenting).  Only AEDPA can confer our jurisdiction to review the district court's disposition of Allah-U-Akbar's petition for habeas relief.  And under AEDPA, the threshold jurisdictional inquiry is whether the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  As explained, because Allah-U-Akbar's unconstitutional death sentence has been vacated, he no longer meets the statutory requirement for federal habeas jurisdiction.

To circumvent AEDPA's jurisdictional requirement, the majority relies on *Mason v. Mitchell*, 729 F.3d 545, 550 (6th Cir. 2013), in which a panel of our court held under similar circumstances that "if a state fails to release the petitioner from the unconstitutional judgment within the time period prescribed by the conditional writ, the habeas court has jurisdiction to consider the noncompliance and impose sanctions."  But whether sanctions are warranted and whether a prisoner is incarcerated in violation of federal law are two discrete questions, only one of which (the latter) we have jurisdiction to decide under AEDPA.  Instead of asking whether the petitioner remained "in custody in violation of the Constitution or laws or treaties of the United

States" at the time of appellate review, 28 U.S.C. § 2254(a), the *Mason* court erroneously applied its notions of federal judicial supremacy and power to issue sanctions to exercise jurisdiction over an individual whose unconstitutional death sentence had been vacated by the state (albeit belatedly, like in Allah-U-Akbar's case).

Ignoring AEDPA's jurisdictional requirement and citing no alternative statutory authority, the *Mason* panel relied only on *D'Ambrosio, 656 F.3d at 379.* But *D'Ambrosio* did not support *Mason*'s novel expansion of federal jurisdiction over habeas petitions—nor does it support our exercise of jurisdiction here. Notably, in *D'Ambrosio*, the state never complied with the writ. *Id.* at 381–82. In *Mason* and in Allah-U-Akbar's case, by contrast, the states eventually complied by vacating the death sentences. Indeed, in holding that "the district court continued to retain jurisdiction over D'Ambrosio's case," the *D'Ambrosio* court emphasized this precise distinction by distinguishing *Eddleman*: "D'Ambrosio's convictions were never 'vacated' as Eddleman's convictions were." *Id.* at 388. The vacatur of the unconstitutional death sentence in *Mason* should have put it in line with *Eddleman*, not *D'Ambrosio*. Yet *Mason* cited no precedent or statutory authority that justified its exercise of jurisdiction after the petitioner was no longer "in custody pursuant to the judgment of a State court" nor "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

In short, *Mason* contravenes AEDPA's clear command. Moreover, because it is "irreconcilable" with the earlier-decided *Eddleman*, it should not be followed. *See Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 316–17 (6th Cir. 2023); *see also* 6 Cir. R. 32.1(b).

B.

Alternatively, the majority holds that we have jurisdiction to review the denial of Allah-U-Akbar's Rule 60(b) motion because "[i]f a state is noncompliant with the writ, then the district court may impose sanctions pursuant to Rule 60(b) even after the writ is fully complied with." For its Rule 60(b) analysis, the majority relies on *D'Ambrosio* and *Mason*, as well as *Girts v. Yanai*, 600 F.3d 576 (6th Cir. 2010). But none of these cases say anything about review of a Rule 60(b) motion after vacatur of an unconstitutional sentence. And all three cases are either at

odds with the earlier-decided *Eddleman* or grapple little, if at all, with AEDPA's language, and none should be read to authorize what the statute does not.

Regarding *D'Ambrosio*, although Rule 60(b) "is considered a continuation of the original proceeding," 656 F.3d at 388 (citation modified), its general rule of continuing jurisdiction is limited by AEDPA, particularly where the "original proceeding" terminated by way of compliance. Unlike *D'Ambrosio*, where the state never complied with the unconditional writ, here the state vacated Allah-U-Akbar's sentence and thus complied with the writ. Thus, the district court could no longer arguably exercise jurisdiction or amend its judgment under Rule 60(b) because the "original proceeding"—i.e., the habeas petition for relief from unconstitutional confinement—was terminated. The state's failure to *timely* comply with the writ does not change the fact that compliance stripped the district court of its AEDPA-created jurisdiction over this habeas case.

*Charter Township of Muskegon v. City of Muskegon*, 303 F.3d 755 (6th Cir. 2002) does not alter this conclusion. The majority opinion, like *D'Ambrosio*, cites it for the proposition that when a district court has jurisdiction to enter a judgment it possesses continuing jurisdiction to adjudicate a related 60(b) motion. But jurisdiction in that case stemmed from diversity of citizenship. It was thus not restricted by AEDPA's limited grant of habeas jurisdiction and is therefore not controlling here.

The majority's reliance on *Girts* fares no better. It attempts to soften *Eddleman*'s holding by pointing to a statement in *Girts* that "*Eddleman* must be seen as merely a sensible reaffirmation of the principle announced in *Fisher v. Rose*, 757 F.2d 789 (6th Cir. 1985), that federal courts do not have continuing oversight of subsequent state court proceedings following the state's compliance with a grant of a conditional writ of habeas corpus." *Girts*'s limited reading of *Eddleman*, though, does not alter *Eddleman*'s fundamental holding: The vacatur of a "criminal judgment remove[s] the predicate for federal habeas jurisdiction." *Gillispie*, 771 F.3d at 326 (citing *Eddleman*, 586 F.3d at 413). That proposition, articulated in *Eddleman* and reaffirmed in *Gillispie*, aligns with AEDPA's clear language conferring jurisdiction only when a state prisoner is in custody in violation of federal law. Rule 60(b) cannot be used to skirt that requirement, as the "[r]ule authorizes the court only to grant '[r]elief' from an order granting the

writ, not to enforce the order after the unconstitutional judgment is gone." *Gillispie*, 771 F.3d at 330.

Finally, the majority warns that "conditional writs 'would be meaningless' if a habeas court could not determine compliance with them and order sanctions accordingly" (quoting *Mason*, 729 F.3d at 549). While such a grant of jurisdiction may make good policy, we are limited to the subject-matter jurisdiction Congress authorized in AEDPA. Indeed, the Supreme Court has warned that "we may not engraft our exceptions onto the statutory text." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 70 (2019) (citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 556–57 (2005)). AEDPA channels federal habeas jurisdiction narrowly: A federal court possesses it when a person is "in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Once the unconstitutional judgment is vacated, the role of the federal courts ends per AEDPA. Whether to expand that role is a "policy choice for Congress to resolve." *Soto v. United States*, 605 U.S. 360, 375 (2025) (citation modified).

IV.

In sum, although the district court ordered the sentence to be vacated within five days and the state court took 95 days to do so, that delay does not change the relevant fact: Allah-U-Akbar is no longer "in custody in violation of [federal law]" and we therefore have no jurisdiction on appeal. 28 U.S.C. § 2241(c)(3). To retain subject-matter jurisdiction after compliance in this context would contravene AEDPA's text and would "give short shrift to the State's sovereign interest in its final judgment." *Brown v. Davenport*, 596 U.S. 118, 133 (2022) (citation modified). Indeed, habeas corpus safeguards individual liberty, but it does so without displacing the state's primary responsibility for criminal law enforcement. *Hodge v. Plappert*, 136 F.4th 648, 658 (6th Cir. 2025). "Defining and enforcing the criminal law" typically falls within the state's sovereign prerogative. *Shinn v. Ramirez*, 596 U.S. 366, 376 (2022) (quoting *Engle v. Isaac*, 456 U.S. 107, 128 (1982)). To expand federal jurisdiction so that we may police the state's timelines or punish delay after the state has already vacated an unconstitutional sentence would encroach upon that function.

V.

Because the State of Ohio has vacated the previous basis for our subject-matter jurisdiction—Allah-U-Akbar's unconstitutional death sentence—we no longer possess jurisdiction and thus I would dismiss this appeal.